[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 327.]

ROYSTER, APPELLANT, *v.* TOYOTA MOTOR SALES, U.S.A., INC., APPELLEE.

[Cite as *Royster v. Toyota Motor Sales, U.S.A., Inc.*, 2001-Ohio-212.]

*Consumer sales practices—Nonconforming new motor vehicles—Lemon Law—*
    *Consumers enjoy a presumption of recovery under R.C. 1345.73(B), when.*

(No. 00-1076—Submitted February 28, 2001—Decided June 28, 2001.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 75634.

————————————

SYLLABUS OF THE COURT

A consumer enjoys a presumption of recovery under R.C. 1345.73(B) if his or her
    vehicle is out of service by reason of repair for a cumulative total of thirty
    or more calendar days in the first year of ownership regardless of whether
    the vehicle was successfully repaired at some point beyond that thirty-day
    period.

————————————

PFEIFER, J.

{¶ 1} In this case, we address Ohio's Lemon Law, specifically the portion
of R.C. 1345.73 that addresses whether a manufacturer has had a reasonable
opportunity to repair a defective automobile. We hold that a consumer enjoys a
presumption of recovery under R.C. 1345.73(B) if his or her vehicle is out of
service by reason of repair for a cumulative total of thirty or more calendar days in
the first year of ownership regardless of whether the vehicle was successfully
repaired at some point beyond that thirty-day period.

Factual and Procedural Background

{¶ 2} The facts here are not in dispute. On February 3, 1996, appellant
Kimberly G. Royster leased a new 1996 Toyota 4-Runner at the Toyota on the
Heights dealership in Cleveland Heights, Ohio. The vehicle was warranted by

appellee, Toyota Motor Sales U.S.A., Inc. ("Toyota"). Toyota issued Royster a three-year/thirty-six-thousand-mile warranty on the vehicle. Approximately nine months after gaining possession of the vehicle, on November 7, 1996, Royster noticed that it was leaking a red fluid. The vehicle was towed to the dealership that day. At that time it had an odometer reading of approximately 10,129 miles.

{¶ 3} The dealership determined that the 4-Runner had a leaking head gasket that needed to be replaced. However, the dealership had difficulty locating the correct part. Thus, the dealership did not complete the repair until December 31, 1996, after the vehicle had been unavailable to Royster for fifty-five days. Toyota on the Heights had provided Royster with a used Toyota Camry as a loaner at no charge beginning on November 15, 1996.

{¶ 4} On January 6, 1997, Royster returned the vehicle to the dealership to correct problems with the paint on a door and with the brakes. The brakes required resurfacing due to disuse during the extended repair period. The repairs were made, and Royster picked up her vehicle. After that, Royster experienced no further mechanical difficulties with the 4-Runner.

{¶ 5} On May 30, 1997, Royster filed a Lemon Law claim against Toyota. Both parties filed motions for summary judgment. On June 9, 1998, the trial court granted Royster's motion. The court held that Royster had demonstrated her right to recovery based upon the Lemon Law's presumption in favor of recovery if a vehicle is "out of service by reason of repair for a cumulative total of thirty or more calendar days" in the first year of ownership. The court awarded her and her lienholder $38,565.54 and also entered an additional $7,649 judgment against Toyota for Royster's attorney fees. Toyota appealed the ruling.

{¶ 6} The Eighth District Court of Appeals overturned the trial court's decision. The court held that the trial court had erred in finding that the car's fifty-five days out of service created a presumption of recovery for Royster under the Lemon Law. The appellate court held that the dealership made a reasonable

number of attempts to repair the vehicle and was ultimately successful in conforming the car to its warranty. The court reasoned that Royster would have had a valid Lemon Law claim only if the vehicle had not conformed to its warranty after the dealership's "reasonable number of repair attempts." The cause is before this court upon the allowance of a discretionary appeal.

Law and Analysis

{¶ 7} The car-buying experience may be the most complicated mating dance in all of the animal world. It seems a given that both parties must engage in half-truths ("I don't know if I can afford this"), double meanings ("Let's see if we can make the numbers work"), semantic gymnastics ("Priced below invoice"), expressions of powerlessness ("Let me talk to my manager"/"Let me talk to my spouse"), and white lies ("I'm talking to someone at another dealership") before the relationship finally culminates in a deal. Once the deal for a new automobile is complete, however, the clear language of the General Assembly takes over, without any hidden meanings or purposely confusing wordplay.

{¶ 8} Ohio's Lemon Law is designed to protect consumers from chronically defective new automobiles. It requires new vehicles to live up to warranties given by manufacturers. The Lemon Law attaches a clear duty to sellers, and provides a clear remedy to buyers should the seller breach its duty.

{¶ 9} Pursuant to R.C. 1345.72(A), a vehicle must abide by its warranty, and if the condition of the automobile does not meet what is warranted, the seller must repair it:

"If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs

as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period."

{¶ 10} While R.C. 1345.72(A) attaches a clear duty on sellers and gives them the opportunity to preclude recovery by making prompt repairs, R.C. 1345.72(B) provides consumers a swift and simple remedy should the car not be made right within a reasonable number of attempts. During the time at issue R.C. 1345.72(B) stated:

"(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition that substantially impairs the use, safety, or value of the motor vehicle to the consumer after a reasonable number of repair attempts, the manufacturer shall, at the consumer's option, and subject to division (D) of this section replace the motor vehicle with a new motor vehicle acceptable to the consumer or accept return of the vehicle from the consumer and refund each of the following:

"(1) The full purchase price including, but not limited to, charges for undercoating, transportation, and installed options;

"(2) All collateral charges, including but not limited to, sales tax, license and registration fees, and similar government charges;

"(3) All finance charges incurred by the consumer;

"(4) All incidental damages, including any reasonable fees charged by the lender for making or canceling the loan." 1987 Am.Sub.H.B. No. 232, 142 Ohio Laws, Part II, 3011.

{¶ 11} Thus, if a manufacturer cannot repair a new automobile after a reasonable number of attempts, a buyer may request a refund or a replacement. Lest there be a doubt, and subsequent exhaustive litigation, as to what constitutes "a reasonable number of repair attempts," R.C. 1345.73 sets limits. During the time at issue it provided:

"It shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following apply;

"(A) Substantially the same nonconformity has been subject to repair three or more times and continues to exist;

"(B) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days;

"(C) There have been eight or more attempts to repair any nonconformity that substantially impairs the use and value of the motor vehicle to the consumer;

"(D) There has been at least one attempt to repair a nonconformity that results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, and the nonconformity continues to exist." 142 Ohio Laws, Part II, 3012.

{¶ 12} R.C. 1345.73 is at the heart of this case. The appellate court held that R.C. 1345.73(B) does not create a presumption of recovery "but rather a presumption that a reasonable number of attempts to conform the vehicle to warranty have been made." According to the appellate court, the buyer must further show that after that "reasonable number of attempts" the vehicle still does not conform to its warranty. Because Royster had failed to prove that the 4-Runner remained defective after Toyota's nearly two-month repair attempt, the court ordered judgment in Toyota's favor.

{¶ 13} We disagree with the appellate court's interpretation. The Lemon Law recognizes that occasionally new cars do have problems, but if those problems keep happening, or cannot be repaired in a reasonable amount of time, then the consumer did not get what he or she bargained for. R.C. 1345.73 is the "enough is enough" portion of the statute. That section makes the amount of repair activity on

the vehicle define whether the vehicle is a lemon. R.C. 1345.73 is a kind of statute of limitations—it sets in well-defined terms the limit of frustration a consumer must endure.

{¶ 14} R.C. 1345.73 sets the cutoff point of reasonableness. Under R.C. 1345.73(A), (C), and (D), respectively, a manufacturer gets three tries to repair a particular nonconformity, eight tries to correct any combination of nonconformities that substantially impair the use and value of the vehicle, and one try to repair a nonconformity that results in a condition that makes the vehicle extremely dangerous to drive. The statute does its best to avoid leaving reasonableness open to interpretation, instead defining what is reasonable in strict terms.

{¶ 15} The subsection applicable in this case, R.C. 1345.73(B), marks as thirty days the limit that a consumer need tolerate having his or her vehicle out of service in the first year of ownership. Whether the vehicle is driveable after those thirty days is irrelevant. Indeed, the statute speaks in terms of a *cumulative* thirty days out of service. Thus, the vehicle could have entered the shop on numerous occasions and been repaired each time. The *unavailability* of the new car is the key element. The fact that a consumer cannot drive a newly purchased vehicle for a full month in the first year of ownership defines the vehicle as a lemon. The General Assembly struck thirty days as the balance between what a consumer must endure and the time a manufacturer needs to make necessary repairs. Nothing beyond thirty days is statutorily reasonable. Once the boundaries of reasonableness have been passed, the vehicle at that point becomes, legally, a lemon.

{¶ 16} By leaving little room for interpretation, R.C. 1345.73 leaves little room for litigation. As a consumer-protection law, the Lemon Law must be simple and must have teeth in order to be effective. The law is designed for self-help without protracted litigation. To work well, the statute needs a harsh remedy at a time certain. Ohio's Lemon Law does that better than most states' laws:

"Ohio's standards for 'reasonable number of attempts' are among the most stringent in the nation in that the number of repair attempts before liability attaches is low. * * * Under the lemon law, the consumer need only show that his automobile has been unsuccessfully repaired the requisite number of times and the Act takes effect. Unless the manufacturer can show that the defects were not substantial or were the fault of the consumer, the manufacturer will be forced to replace the car or refund the purchase price." Comment, Ohio's Lemon Law: Ohio Joins the Rest of the Nation in Waging War Against the Automobile Limited Warranty (1989), 57 U.Cin.L.Rev. 1015, 1032.

{¶ 17} Despite its pucker-inducing remedy, the Lemon Law does have protections for manufacturers. The law does not create remedies for buyers who have soured on their new vehicle for cosmetic or other trivial reasons. The vehicle's problem must "substantially impai[r] the use, safety, or value of the motor vehicle to the consumer." Besides the requirement of a major defect and the right of the manufacturer to preclude recovery by prompt repair, the Lemon Law also provides defenses to manufacturers. A consumer cannot recover under the Lemon Law if the nonconformity is "the result of abuse, neglect, or the unauthorized modification or alteration of a motor vehicle by anyone other than the manufacturer, its agent, or its authorized dealer." R.C. 1345.75.

{¶ 18} Still, the Lemon Law remains a powerful tool for consumers. A tangential effect of a tough Lemon Law may be to persuade manufacturers to be hyper-vigilant when new car buyers bring their vehicles in for repair. In most cases, the threat of a remedy may be enough to achieve a positive result with which both parties can be happy. Unfortunately, that did not happen in this case.

{¶ 19} We agree with the trial court in this case that a leaking head gasket "certainly maintains the look, feel, and potential expense of a disaster" and meets the statutory definition of a substantial impairment. Toyota obviously failed to repair the problem within thirty days, and failed to assert that any of the statutory

affirmative defenses were applicable. The appellate court seemed to consider the dealership's providing of a loaner car a *de facto* affirmative defense. While an admirable gesture, lending a car to a consumer with a Lemon Law claim provides no statutory defense. The true focus of the Lemon Law is on the *automobile*. In enacting the Lemon Law, the General Assembly defines for consumers when an automobile becomes a lemon, not when a dealer is not being considerate enough.

{¶ 20} Royster demonstrated that she enjoyed a presumption of recovery under R.C. 1345.73(B). Toyota had no defenses available. Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court. Further, we grant appellant's motion to remand the cause to the trial court for a determination of additional attorney fees incurred on appeal.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., and COOK, J., concur in part and dissent in part.

LUNDBERG STRATTON, J., dissents.

_____

**COOK, J., concurring in part and dissenting in part.**

{¶ 21} By entering judgment for Toyota on the basis that Royster failed to show that her vehicle "remained defective * * * *after*" (emphasis *sic*) fifty-six days of repairs, the court of appeals rendered R.C. 1345.73(B) nugatory. Under the appellate court's reasoning, so long as a dealer *eventually* repairs a vehicle that is out of service for a cumulative total of thirty or more calendar days during the first year of ownership or eighteen thousand miles, the vehicle cannot be a "lemon," for it would not have "remained defective * * * *after*" those repairs finally and favorably concluded. This approach conflicts with the General Assembly's stated intent to provide a possible remedy for consumers whose new vehicles are "out of service" for thirty days or more. See R.C. 1345.73.

**{¶ 22}** As the majority notes, the General Assembly envisioned three typical categories of lemons that it described with reference to the *number of repair attempts* undertaken. See R.C. 1345.73(A), (C), and (D). But it also envisioned a fourth typical category of lemons, describing this category with reference to *cumulative time out of service*—regardless of any ultimately favorable repair outcome. R.C. 1345.73(B). With its dispositive focus on Royster's favorable repair outcome, the appellate court inserted a nonexistent condition into this fourth category, and today's majority correctly reverses the court of appeals' decision on that basis.

**{¶ 23}** I respectfully disagree, however, with the majority's syllabus and much of its analysis. The syllabus provides that a consumer enjoys a "presumption of recovery" under R.C. 1345.73(B) if his or her vehicle is out of service for thirty or more calendar days in the first year of ownership. The trial court applied similar reasoning in its opinion and order granting Royster's motion for summary judgment, stating—without citation of supporting legal authority—that "a presumption of recovery exists when the vehicle has been out of service by reason of repair for a cumulative total of thirty or more calendar days, and Plaintiff's vehicle was out of service for 56 days."

**{¶ 24}** As the court of appeals correctly noted, however, the problem with the "presumption of recovery" theory applied by both the trial court and today's majority is that there simply is no presumption of recovery contained in the statutory scheme created by the General Assembly. The statutory presumption that *does* appear in R.C. 1345.73 may indeed assist a consumer in meeting *one* of the elements of a Lemon Law claim under R.C. 1345.72(B)—a showing that the dealer has made a reasonable number of repair attempts. But to label R.C. 1345.73's presumption a "presumption of recovery" is to muddle the relationship between R.C. 1345.72 and 1345.73. These are two separate statutes with distinct functions.

See *Stepp v. Chrysler Corp.* (Nov. 7, 1996), Knox App. No. 95CA000052, unreported, 1996 WL 752794.

**{¶ 25}** As the *Stepp* court reasoned, "R.C. 1345.73 merely establishes a statutory presumption as to what constitutes a reasonable number of repair attempts by the manufacturer. The statute does not obviate the requirement that the claimant prove a non-conformity which substantially impairs the use, safety, or value of the vehicle pursuant to R.C. 1345.72(B)." *Id.* See, also, *Kademenos v. Mercedes-Benz of N. Am., Inc.* (Mar. 3, 1999), Richland App. No. 98 CA 50, unreported, 1999 WL 174390, at *3 (citing *Stepp*); *Laberdee v. Smith* (July 14, 1997), Lucas C.P. No. 95-0700, unreported, 1997 WL 808591 ("R.C. 1345.73 merely establishes a statutory presumption as to that which constitutes a reasonable number of repair attempts. [Citing *Stepp.*] Meeting one of them shifts the burden on [an] element of a lemon law case—reasonable opportunity to conform. Not meeting one of them means the consumer has the burden of proving the manufacturer had been given reasonable opportunity but failed to conform the vehicle to its warranty").

**{¶ 26}** For these reasons, I cannot agree with the rule of law set forth in today's syllabus. The syllabus inserts a presumption of recovery into a statute—R.C. 1345.73—that already contains a distinctly different (and more limited) statutory presumption. A syllabus saying that R.C. 1345.73 creates a presumption of recovery is especially confusing, given that *recovery* under the lemon scheme actually occurs not "under R.C. 1345.73," as the majority's syllabus suggests, but under R.C. 1345.72 instead. See R.C. 1345.72(B) (allowing the aggrieved consumer to recover either a new vehicle or a refund of the purchase price plus associated charges).

**{¶ 27}** I disagree with another aspect of the majority's analysis. In support of her second proposition of law, Royster suggests that "under no circumstances should the time limit set by the Ohio lemon law presumptions be extended as the legislature has clearly spoken on this issue." The majority apparently agrees,

10

stating, "The General Assembly struck thirty days as the balance between what a consumer must endure and the time a manufacturer needs to make necessary repairs. *Nothing beyond thirty days is statutorily reasonable. Once the boundaries of reasonableness have been passed, the vehicle at that point becomes, legally, a lemon.*" (Emphasis added.) The majority appears to have adopted Royster's suggestion that the statutory presumption contained in R.C. 1345.73(B) is a conclusive or irrebuttable presumption.

{¶ 28} The problem with this approach is that, as this court has previously noted, "statutory presumptions not specifically designated to be conclusive, may be rebutted by other evidence." *State v. Myers* (1971), 26 Ohio St.2d 190, 201, 55 O.O.2d 447, 453, 271 N.E.2d 245, 252, citing *State ex rel. Olsen v. Indus. Comm.* (1967), 9 Ohio St.2d 47, 50, 38 O.O.2d 126, 127-128, 223 N.E.2d 362, 364; *State ex rel. Pivk v. Indus. Comm.* (1935), 130 Ohio St. 208, 212, 4 O.O. 153, 155, 198 N.E. 631, 633. No language in R.C. 1345.73(B) designates the presumption as irrebuttable. R.C. 1345.73(B). See, also, Black's Law Dictionary (7 Ed.1999) 1204, citing Wigmore, A Student's Textbook of the Law of Evidence (1935) 454 (" ' "Conclusive presumptions" or "irrebuttable presumptions" are usually mere fictions, to disguise a rule of substantive law * * *; and when they are not fictions, they are usually repudiated by modern courts' ").

{¶ 29} For the foregoing reasons, I would reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

MOYER, C.J., concurs in the foregoing opinion.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 30} I respectfully dissent from the majority decision that a thirty-day delay in a repair creates a virtually irrebuttable presumption of recovery.

{¶ 31} The purpose and spirit of the Lemon Law is to provide a remedy to a consumer who has lost confidence in the operation of his or her new vehicle due to a significant or persistent defect that cannot be repaired at all or cannot be repaired in a reasonable number of attempts. Consequently, a Lemon Law claim arises only where the manufacturer is unable to repair a defect that "substantially impairs the use, safety, or value" of the vehicle or alternatively is unable to repair the defect in a reasonable number of attempts. R.C. 1345.72(B). As the majority recognizes, "[t]he Lemon Law recognizes that occasionally new cars do have problems, but if those problems keep happening, or cannot be repaired in a reasonable amount of time, then the consumer did not get what he or she bargained for."

{¶ 32} In this case, the engine was subject to a single repair, which completely corrected the defect. The majority opinion focuses on the thirty-day presumption in R.C. 1345.73(B) and holds that if a vehicle is out of service for a cumulative of thirty days, the owner enjoys a presumption of recovery. I agree with Justice Cook's dissent to the extent that R.C. 1345.73(B) does not provide a presumption of *recovery*, but merely a presumption that the manufacturer has undertaken a reasonable number of attempts to repair the vehicle, which is only one element of a Lemon Law claim. However, I also believe that, contrary to the import of the majority's opinion, the presumption in R.C. 1345.73(B) is rebuttable and in fact has been rebutted in this case.

{¶ 33} R.C. 1345.73(B) states that if a vehicle is out of service due to repair for a cumulative total of thirty days or more, then a presumption arises that the manufacturer has had a *reasonable number of attempts* to repair the defect. The presumption in R.C. 1345.73(B) is essentially an evidentiary tool to aid consumers

in proving when a manufacturer has exhausted its reasonable number of attempts to repair the defect for purposes of filing a Lemon Law complaint. However, a presumption may be rebutted. See Evid.R. 301.

{¶ 34} It is undisputed that the 4-Runner was unavailable to Royster for more than thirty days. However, the reason for the delay was not an inability by Toyota to promptly diagnose or repair the defect. Rather, the delay was due to the unavailability of the replacement head gasket. But for the delay in receiving the replacement head gasket, the 4-Runner would have been in the shop for less than thirty days and the presumption under R.C. 1345.73(B) would never have arisen. I do not believe that a delay in acquiring a part deprives the consumer of what he or she bargained for, because it does not lessen the consumer's confidence in the *operation* of the vehicle. I believe that the presumption set out in R.C. 1345.73(B), that the manufacturer has undertaken a "reasonable number of attempts to repair," is rebutted where the sole reason for the delay was a back-ordered part. Thus, I believe that Toyota has rebutted the presumption that it had undertaken a reasonable number of attempts to repair Royster's 4-Runner. Therefore, Royster's complaint would fail because she cannot prove an essential element of the Lemon Law statute.

{¶ 35} I do not intend to trivialize losing the use of a vehicle for almost two months. However, Toyota provided Royster a loaner vehicle to use free of charge while the 4-Runner was in the shop.

{¶ 36} The majority's holding distorts the spirit and purpose of the Lemon Law and opens the floodgates for consumers to return new vehicles that are not genuine lemons as envisioned by the Lemon Law to the unjustified financial detriment of auto manufacturers. Accordingly, I respectfully dissent and would affirm the court of appeals' judgment.

_____

*Kahn & Associates, L.L.C*., and *Craig A. Kahn*, for appellant.

*Frost & Jacobs, L.L.P.,* and *Jeffrey G. Rupert*, for appellee.

*Betty D. Montgomery*, Attorney General, *Valerie A. Roller*, Assistant Attorney General, and *Peter M. Thomas*, Assistant Solicitor, urging reversal for *amicus curiae* Attorney General Betty Montgomery.

*Young & McDowall* and *Laura McDowall*, urging reversal for *amicus curiae* Ohio Academy of Trial Lawyers.

_____