MAITLAND ET AL., APPELLEES, *v.* FORD MOTOR COMPANY ET AL., APPELLANTS.

[Cite as *Maitland v. Ford Motor Co.*,
103 Ohio St.3d 463, 2004-Ohio-5717.]

(No. 2003–1284—Submitted May 11, 2004—Decided November 10, 2004.)

LUNDBERG STRATTON, J.

{¶ 1} We are asked to review the legal sufficiency of a complaint that alleges violations of Ohio's Lemon Law and Consumer Sales Practices Act. Plaintiffs-appellees allege that deductions for mileage or reasonable use against settlement or arbitration awards in the informal dispute-resolution process violate Ohio's

Lemon Law and constitute a deceptive and unconscionable act under Ohio's Consumer Sales Practices Act ("CSPA").

{¶ 2} Plaintiffs-appellees, Beatrix Maitland, Elton J. Shaw, and Duane J. Adams, filed this action against defendants-appellants, Ford Motor Company, General Motors Corporation, and DaimlerChrysler Corporation, alleging that the three auto manufacturers had engaged in a scheme or course of conduct in which they withheld a setoff for the use of the vehicle from settlement or arbitration awards rather than refunding the full value of the vehicle, in violation of R.C. 1345.72(B), 1345.02 and 1345.03. Plaintiffs also alleged that defendants committed fraud by failing to disclose that prevailing consumers were entitled to a full refund.

{¶ 3} Plaintiffs filed their claims individually and, pursuant to Civ.R. 23, on behalf of a class of "all persons and entities who purchased or leased a vehicle from Defendants on or after August 15, 1988 and: (1) who have submitted claims under the Ohio Lemon Law Statute, R.C. § 1345.71 et seq.; (2) whose vehicles were determined to be nonconforming vehicles through settlement or arbitration award; and (3) who received less than a full statutory refund due to Defendants' unlawful application of a reasonable use deduction formula allowing a set-off for miles driven."

{¶ 4} Plaintiffs alleged that their individual claims are typical of the claims of all class members. Plaintiff-appellee Beatrix Maitland purchased a new 1998 vehicle that was manufactured by Ford. Maitland experienced repeated problems with the vehicle. Her dispute was submitted to a dispute-resolution board. The arbitrator determined that she was entitled to a replacement or refund of her vehicle, less $1,222.18 for a "mileage/usage fee."

{¶ 5} Plaintiff-appellee Elton J. Shaw purchased a new Pontiac vehicle that was manufactured by General Motors. Shaw experienced repeated problems with the vehicle. He agreed to arbitrate his dispute. The arbitrator determined that he was entitled to a replacement or refund of the purchase price of his vehicle, less a deduction of $480.28 for "reasonable use."

{¶ 6} Plaintiff-appellee Duane J. Adams leased a 1996 Dodge vehicle that was manufactured by DaimlerChrysler. Adams experienced repeated problems with the vehicle and he submitted an application to arbitrate his dispute. The arbitrator determined that he was entitled to a termination of his lease. A "mileage fee" of approximately $6,063.20 was deducted from the amount of Adams's refund.

{¶ 7} Defendants moved to dismiss pursuant to Civ.R. 12(B)(6) for failure to state a claim for which relief may be granted. They alleged (1) that plaintiffs accepted the arbitration decisions and had settled their claims, barring any further civil action under the Lemon Law, (2) that the settlement and the

arbitration process regulated by the Attorney General does not constitute an unfair or deceptive sales practice under the CSPA, and (3) that the plaintiffs did not allege elements of a prima facie claim of fraud.

{¶ 8} The trial court granted the defendants' motions to dismiss. The court held that the plaintiffs had accepted the settlement offers and were precluded from filing a civil action under R.C. 1345.75 for additional damages. In addition, the court held that the Attorney General had authorized the use of the mileage setoff, so it could not constitute a deceptive act in violation of CSPA, and that plaintiffs failed to assert a claim of fraud.

{¶ 9} The court of appeals, however, reversed the dismissal of the Lemon Law and CSPA claims and remanded the cause. It concluded that the Lemon Law did not authorize a setoff from the refund of the purchase price and that the Attorney General had no authority to sanction a setoff. Therefore, defendants' use of the deduction violated the Lemon Law. The appellate court also concluded that plaintiffs had sufficiently stated a claim that the dispute-resolution board's settlement offer of a refund minus the mileage deduction violated the CSPA. Thus, the court reversed and remanded, finding that the plaintiffs were entitled, pursuant to R.C. 1345.75, to bring a civil action for noncompliance and to assert a claim under R.C. 1345.02 and 1345.03. The court affirmed the dismissal of the fraud claim.

{¶ 10} The cause is before this court upon the acceptance of a discretionary appeal.

## Standard of Review

{¶ 11} This case comes to us having been dismissed pursuant to Civ.R. 12(B)(6) for failure to state a claim for relief. When reviewing a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiffs. For the moving defendants to prevail, it must appear from the face of the complaint that the plaintiffs can prove no set of facts that would entitle them to relief. *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 280, 649 N.E.2d 182; *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378.

{¶ 12} Therefore, we review the applicable law for each cause of action before us and determine whether the facts as alleged in the complaint would entitle plaintiffs to relief.

## Lemon Law

{¶ 13} Ohio's Lemon Law, R.C. 1345.71 et seq., enacted in 1987, was designed to give a purchaser greater leverage in seeking redress when his or her new auto

turns out to be a "lemon." *Royster v. Toyota Motor Sales, U.S.A., Inc.* (2001), 92 Ohio St.3d 327, 750 N.E.2d 531; Julian B. Bell III, Comment, Ohio's Lemon Law: Ohio Joins the Rest of the Nation in Waging War 'Against the Automobile Limited Warranty (1989), 57 U.Cin.L.Rev. 1015, 1028. The law places a clear duty upon a manufacturer or its agents to make any necessary repairs so that a new vehicle conforms to the applicable express warranties even after the warranty has expired. R.C. 1345.72(A). If the manufacturer or seller cannot make the vehicle conform after a reasonable number of attempts, then the consumer may elect to either replace the vehicle or be refunded its full purchase price. R.C. 1345.72(B).

{¶ 14} The Lemon Law provides the purchaser with a statutory cause of action if the manufacturer does not comply with R.C. 1345.72. However, the consumer must first resort to an informal dispute-resolution process if one exists. R.C. 1345.77.

{¶ 15} R.C. 1345.77(A) directs the Attorney General to adopt rules to establish and qualify an "informal dispute resolution mechanism" to resolve warranty disputes that may arise between the consumer and manufacturer. The Attorney General promulgated Ohio Adm.Code 109:4–4–01 et seq., which governs the establishment and operation of informal dispute settlement boards aimed at settling warranty disputes. The rules allow the manufacturer to establish an informal dispute-settlement board. Ohio Adm.Code 109:4–4–02. Although this is optional, if a manufacturer elects to establish such a board, it must be sufficiently insulated from the manufacturer to "ensure fair and expeditious resolution of all disputes" free from the manufacturer's influence. Ohio Adm.Code 109:4–4–04(A)(1) and (2). There is no charge to the consumer for use of the board's services. Ohio Adm.Code 109:4–4–04(A)(1).

{¶ 16} Since 1991, Ohio Adm.Code 109:4–4–04(C)(3) has explicitly stated that during the informal dispute-resolution process, the parties may settle the case at any time. If no settlement is reached, the purchaser is given an opportunity to present his or her case to the board. "The board shall investigate, gather and organize all information necessary for a fair and expeditious decision." Ohio Adm.Code 109:4–4–04(C)(3).

{¶ 17} The board's decision is binding on the manufacturer, but not on the consumer. R.C. 1345.77(B); Ohio Adm.Code 109:4–4–03(E)(2). The consumer may reject the decision and pursue a civil action under R.C. 1345.75. Ohio Adm.Code 109:4–4–04(C)(7)(a). However, if the consumer accepts the board's decision, the dispute is considered settled once the manufacturer performs. Ohio Adm.Code 109:4–4–04(C)(5).

{¶ 18} The plaintiffs participated in the dispute-resolution process prior to litigation. They alleged that the proposed class members "received less than a

full statutory refund" as a result of the informal dispute-resolution process or settlement because defendants applied a setoff for mileage or reasonable use.

{¶ 19} Accepting the allegations in the complaint as true, we conclude that the plaintiffs' receipt of funds constitutes their acceptance of a settlement offer or arbitration decision to resolve their warranty dispute. "[A] dispute shall be deemed settled when the board has ascertained from the consumer his or her acceptance of the offer and that the settlement has been fully implemented." Ohio Adm.Code 109:4–4–04(C)(5).

{¶ 20} We agree with the trial court that the plaintiffs had the opportunity to reject the decision of the arbitration board and file a civil action under R.C. 1345.75. Instead, they chose to accept the arbitration decision and settle their warranty disputes. Settlement is the fulfillment of a compromise between parties over a dispute. The parties compromise their claims by agreeing to settle a previously existing claim with a substituted performance. "A valid compromise and settlement bars all right of recovery on the previously existing claim. * * * The previously existing claim is extinguished by the compromise and settlement and, as a result, any subsequent litigation based upon it is barred." *Globe Metallurgical, Inc. v. Hewlett–Packard Co.* (S.D.Ohio 1996), 953 F.Supp. 876, 881, affirmed (C.A.6, 1996), 99 F.3d 1139. Consequently, plaintiffs may not assert a claim under R.C. 1345.75. Ohio Adm.Code 109:4–4–04(C)(7)(a). The trial court properly dismissed the complaint.

{¶ 21} Nevertheless, the court of appeals determined that payment of less than the full statutory remedy provided in R.C. 1345.72 violated the Lemon Law. The court reasoned that because the law does not authorize setoffs, they are not permitted. The court also refused to recognize that the Attorney General's policies could authorize setoffs.

{¶ 22} We find the court's approach to be problematic. First, the appellate court equated the Lemon Law's silence on the use of mileage setoffs to a prohibition. Next, the appellate court imposed its rationale upon an out-of-court, informal settlement process.

{¶ 23} R.C. 1345.72 has been interpreted to mean that a consumer is entitled to a refund of the full purchase price and that any setoff for reasonable mileage is illegal. *Page v. Chrysler Corp.* (1996), 116 Ohio App.3d 125, 128, 687 N.E.2d 9; *Kapel v. Ford Motor Co.* (July 3, 1997), Geauga App. No. 96–G–2028, 1997 WL 401532. *Page* and *Kapel,* however, were not arbitration cases but civil actions filed in court pursuant to R.C. 1345.75, in which a court of law made a legal determination that the manufacturer had failed to comply with express warranties. The cause of action in R.C. 1345.75 expressly includes the remedies available under R.C. 1345.72. Consequently, those remedies applied in *Page* and *Kapel.* *Page* and *Kapel,* however, do not require that the remedies in R.C.

1345.72(B) extend to the informal dispute-resolution mechanism or informal settlement proceedings.

{¶ 24} R.C. 1345.77 does not specify that any particular remedy must be used in the informal dispute-resolution mechanism. Unlike R.C. 1345.75, the statute does not expressly refer to the remedies provided in R.C. 1345.72. Neither do the rules adopted by the Attorney General specify particular remedies. Ohio Adm.Code 109:4–4–04(C)(5)(a) merely directs that the arbitrator's "decision shall include *any* remedies ordered by the panel, including repair, replacement, refund, reimbursement for expenses, and any other remedies available under the written warranty or the act (or rules thereunder)."[1] (Emphasis added.)

{¶ 25} After the Lemon Law went into effect, the Attorney General initiated a policy that expressly authorized qualified dispute-resolution boards to use a formula allowing a setoff for use of the vehicle. Defendants contend that they were following established policy by using the mileage setoff. Plaintiffs argue that Attorney General policy is not binding on a court of law.

{¶ 26} We presume that the General Assembly was aware of the policy that remained in place for years.[2] Nevertheless, the General Assembly took no steps to legislatively overrule the long-standing policy when amending the Lemon Law in 1999. Such legislative inaction in the face of long-standing interpretation suggests legislative intent to retain the existing law. Furthermore, "courts, when interpreting statutes, must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command." *State ex rel. McLean v. Indus. Comm.* (1986), 25 Ohio St.3d 90, 92, 25 OBR 141, 495 N.E.2d 370; *Jones Metal Products Co. v. Walker* (1972), 29 Ohio St.2d 173, 181, 58 O.O.2d 393, 281 N.E.2d 1. Therefore, under these circumstances, where the legislature has granted the authority to the Attorney General to adopt rules governing the informal dispute-resolution mechanisms, we defer to the Attorney General's policy on mileage setoffs.

{¶ 27} Plaintiffs also argue that a setoff for mileage was included in the initial proposed Lemon Law legislation but deleted from the final enactment. According to plaintiffs, because the General Assembly specifically rejected the setoff, it is not permitted under any circumstance. We make no presumptions as to the

---

1. Until 1991, the rule referred to "remedies appropriate under the circumstances" instead of "remedies ordered by the panel" and listed "compensation for damages as a remedy." 1987–1988 Ohio Monthly Record 438.

2. This policy was changed in October 2000 by Attorney General Betty D. Montgomery. Certified informal dispute-resolution boards are no longer permitted to set off any amount for reasonable use against an award.

General Assembly's intentions when deleting any mention of mileage setoffs. Instead, we look to the language used in the statute. As the trial court observed, R.C. 1345.72(B) "does not limit the ability of a manufacturer to offer a sum less than the full statutory recovery in exchange for the consumer avoiding the time, costs, and uncertainty of litigation."

{¶ 28} The Lemon Law "is designed for self-help without protracted litigation." *Royster*, 92 Ohio St.3d at 331, 750 N.E.2d 531. To that end, a consumer may settle a warranty dispute or accept the decision of an informal dispute-resolution board, avoiding the time and cost of protracted litigation and the exasperation of owning a defective vehicle. The consumer agrees to accept a setoff from the refund of the vehicle's purchase price, in lieu of having to prove in court that the vehicle is defective, whereas the setoff provides the manufacturer with an incentive to settle a disputed claim in lieu of requiring the consumer to prove in court that the vehicle is defective. The consumer is not required to make such a compromise, and may instead file a civil action under R.C. 1345.75.

{¶ 29} Because the Lemon Law does not preclude a refund of less than the full purchase price in either settlement or the informal dispute-resolution process, we agree with the trial court that the plaintiffs' cause of action based on the Lemon Law fails to state a claim for relief and should be dismissed.

## Consumer Sales Practices Act

{¶ 30} The plaintiffs alleged:

{¶ 31} "Defendants committed unfair, deceptive and unconscionable acts and practice in violation of R.C. § 1345.02 and § 1345.03 during the arbitration and settlement process. Said acts and practices include, but are not limited to:

{¶ 32} "a) Creating an arbitration process wherein the parties thereto are bound to rules allowing the use of a 'set off' for mileage or other deductions when awarding a refund; and

{¶ 33} "b) Not awarding a refund of the full purchase price, charges, costs and damages mandated by R.C. 1345.72(B)."

{¶ 34} Because we have determined that the settlement and informal dispute-resolution processes are not bound by the remedies set forth in R.C. 1345.72(B) and that the parties' settlements with the manufacturers preclude subsequent litigation, we also hold that the plaintiffs' cause of action based on the Consumer Sales Practices Act fails to state a claim for relief and should be dismissed.

{¶ 35} For the foregoing reasons, we reverse the judgment of the court of appeals regarding the Lemon Law and Consumer Sales Practices Act claims, and we reinstate the judgment of the trial court.

Judgment reversed.

MOYER, C.J., O'CONNOR and O'DONNELL, JJ., concur.

RESNICK, F.E. SWEENEY and PFEIFER, JJ., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 36} R.C. 1345.72(B) provides:

{¶ 37} "If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts, the manufacturer, at the consumer's option and subject to division (D) of this section, either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the following:

{¶ 38} "(1) The full purchase price;

{¶ 39} "(2) All incidental damages, including, but not limited to, any fees charged by the lender or lessor for making or canceling the loan or lease, and any expenses incurred by the consumer as a result of the nonconformity, such as charges for towing, vehicle rental, meals, and lodging."

{¶ 40} The plain language of R.C. 1345.72(B) provides that when the Lemon Law is violated, the consumer can choose between receiving a new car or a full refund. In this case, even though the vehicles were found to violate the Lemon Law, the consumers received neither new cars nor full refunds. The reason for this disconnect is that the consumers were allowed to accept a settlement offer that was contrary to the mandate of R.C. 1345.72(B). Their acceptance of this offer was reasonable. As the court of appeals stated, "The average consumer of a nonconforming vehicle can neither afford nor justify protracted litigation, which could easily cost more than the value of the vehicle. As a result, when faced with a choice between a full refund, less a few hundred or thousand dollars for mileage, and a protracted lawsuit with no guarantee of success, a prudent consumer would accept settlement every time." 153 Ohio App.3d 161, 2003-Ohio-3009, 792 N.E.2d 207, ¶ 31. This inequality of bargaining position was a significant factor in the passage of the Lemon Law. As the majority opinion acknowledges, the Lemon Law "was designed to give a purchaser greater leverage in seeking redress when his or her new auto turns out to be a 'lemon.'" *Royster v. Toyota Motor Sales, U.S.A., Inc.* (2001), 92 Ohio St.3d 327, 750 N.E.2d 531 * * *." Unfortunately, the majority's decision today eviscerates the Lemon Law.

{¶ 41} The majority errs in equating the informal dispute-resolution mechanism ("IDRM") required by R.C. 1345.77 with the "informal dispute settlement boards" established by the Attorney General. The IDRM is "to provide for the

resolution of warranty disputes." R.C. 1345.77. In my view, the IDRM is limited to determining whether the Lemon Law has been violated. No other reading is compatible with the plain language of R.C. 1345.72(B), which provides only two specific remedies for violations of the Lemon Law. To allow settlements when the statute does not authorize them is to read into the statutory scheme provisions that are not there.

{¶ 42} Settlement offers for less value than contemplated by R.C. 1345.72(B) are almost certainly lawful prior to a determination that the Lemon Law has been violated. Here, the complaint adequately alleged that the vehicles had been determined to violate the Lemon Law. Accordingly, the settlement offers in this case were contrary to R.C. 1345.72(B) and therefore could be found to constitute a deceptive and unconscionable act under Ohio's Consumer Sales Practices Act. I would hold that the Civ.R. 12(B)(6) motion should have been overruled and would allow a trial on the merits to go forward. I dissent.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

------

Murray & Murray Co., L.P.A., John T. Murray and Barbara Quinn Smith; Maguire & Schneider, L.L.P., and Patrick Maguire, for appellees.

Carpenter & Lipps, L.L.P., Michael H. Carpenter and Jeffrey A. Lipps, for appellant General Motors Corporation.

Bryan Cave, L.L.P., Jeffrey S. Russell and Paul V. Stearns; Vorys, Sater, Seymour & Pease, L.L.P., Suzanne K. Richards and Nina I. Webb–Lawton, for appellant DaimlerChrysler Corporation.

Baker & Hostetler, L.L.P., Elizabeth A. McNellie and Rodger L. Eckelberry; O'Melveny & Myers, L.L.P., Brian Brooks and Morgen A. Sullivan, for appellant Ford Motor Company.