OPINION
{¶ 1} In this case, Yamaha Motor Corporation, U.S.A. (Yamaha) appeals from a trial court decision granting summary judgment to Dennis Deeter on a claim brought under Ohio's Lemon Law. Yamaha's single assignment of error is that the trial court erred in granting the motion for summary judgment. After reviewing the record and applicable law, we find the assignment of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 I {¶ 2} The facts below were undisputed. On January 19, 2002, Deeter purchased a new 2002 Yamaha Road Star Silverado motorcycle (Road Star) from Competition Accessories (Competition), which was an authorized Yamaha dealership. Yamaha warranted that the Road Star was free of defects and provided a 12 month warranty, during which any defects or non-conforming parts would be repaired at no cost to the purchaser, provided that the problem was not the result of the purchaser's neglect or misuse of the product. The purchase price of the Road Star was about $11,820, including tax.
 {¶ 3} On September 16, 2002, Deeter brought the Road Star to Competition for repairs. At that time, Deeter complained about a "chattering" noise when the Road Star was placed in fourth gear. On September 20, 2002, Competition contacted Yamaha for authorization to tear down the engine so that the problem could be diagnosed. However, Yamaha told Competition that Deeter's authorization was required for a tear down. Three days later, Yamaha received a direct call from Deeter, who complained about Competition's lack of action. Upon contacting Competition, Yamaha learned that a tear down was scheduled for the following day. Competition then reported to Yamaha on September 26, 2002, that there was chatter in the fourth gear and that the fourth gear teeth were ground off. Although needed parts for rebuilding the transmission were ordered, they were not immediately available and were back-ordered.
 {¶ 4} Over the next several weeks, Yamaha and Competition had numerous discussions about the back-ordered parts. The delay was due to a dockworker's strike in Southern California in September and October. Although Yamaha requested emergency air orders, the parts were not expected to arrive until the end of the week of October 20, or possibly the following week. Ultimately, the parts were delivered to Competition on October 31, 2002. Competition then took until November 11, 2002, to repair the Road Star and return it to Deeter. Consequently, the Road Star was out of service for 57 consecutive days. It was also out of service on eight more days, beginning on November 14, 2002. At that time, Deeter took the Road Star to another Yamaha dealership (Joe's Yamaha), where he was told that the previous repair agent had not properly attached the brake light, upper motor mount, and oil return line. Deeter then filed the present lawsuit, asking to revoke his acceptance of the Road Star under Ohio's Lemon Law.
 {¶ 5} In granting summary judgment in Deeter's favor, the trial court found that there was a non-conformity with the Road Star, and that the non-conformity was not corrected within a reasonable amount of time. As a result, the court ordered Yamaha to pay Deeter the purchase price of the Road Star, including incidental damages. The court reserved the issue of attorney fees, and filed a Civ. R. 54(B) certification.
 {¶ 6} As we said, Yamaha contends that the trial court erred in granting summary judgment. We review summary judgment decisions de novo,
which means that "we apply the standards used by the trial court."Brinkman v. Doughty (2000),140 Ohio App.3d 494, 496, 748 N.E.2d 116. Summary judgment is appropriately granted where the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46.
 {¶ 7} Ohio's Lemon Law is codified in R.C. Chap. 1345, and states that:
 {¶ 8} "(A) If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.
 {¶ 9} "(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts, the manufacturer, at the consumer's option and subject to division (D) of this section, either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the following:
 {¶ 10} "(1) The full purchase price;
 {¶ 11} "(2) All incidental damages, including, but not limited to, any fees charged by the lender or lessor for making or canceling the loan or lease, and any expenses incurred by the consumer as a result of the nonconformity, such as charges for towing, vehicle rental, meals, and lodging." R.C. 1345.72.
 {¶ 12} As pertinent to the present case, R.C. 1345.73 further provides that:
 {¶ 13} "It shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following apply:
 {¶ 14} "* * *
 {¶ 15} "(B) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days * * *."
 {¶ 16} The trial court applied this presumption, based on the fact that the vehicle was out of service for 57 consecutive days. Yamaha contends this was erroneous, because the dockworker's strike was an intervening event that should have created issues of fact rebutting the statutory presumption. According to Yamaha, the trial court's action created an irrebuttable presumption, which is contrary to established law that allows the trier of fact to determine proximate cause.
 {¶ 17} We disagree, and find that the trial court properly followed the law as set forth in Royster v. Toyota Motor Sales, U.S.A., Inc.,92 Ohio St.3d 327, 2001-Ohio-212, 750 N.E.2d 531. Royster is particularly relevant because it involved a fact situation much like the present. Specifically, the consumer in Royster had leased a new Toyota 4-Runner that developed a leaking head gasket about nine months into the lease period. 92 Ohio St.3d at 327. Due to a parts shortage, the dealership could not acquire the necessary replacement part from Toyota for 56 days. See Royster v. Toyota Motor Sales, U.S.A. (Mar. 30, 2000), Cuyahoga App. No. 75634, 2000 WL 335495, *1, reversed 92 Ohio St.3d 327,2001-Ohio-212, 750 N.E.2d 531. Similarly, the motorcycle in the present case developed a gear problem after about eight months, and the dealership could not obtain the needed parts from Yamaha for about 45 days.
 {¶ 18} Yamaha argues that Royster is distinguishable because there was no explanation for the delay, whereas here, the delay was due to events that were allegedly not in Yamaha's control. However, the reason the Ohio Supreme Court did not focus at all on the reason for the delay is because the reason was irrelevant. Instead, the pertinent consideration for the court was the length of time the consumer was deprived of the vehicle's use. In this regard, the court commented that:
 {¶ 19} "[t]he Lemon Law recognizes that occasionally new cars do have problems, but if those problems keep happening, or cannot be repaired in a reasonable amount of time, then the consumer did not get what he or she bargained for. R.C. 1345.73 is the `enough is enough' portion of the statute. That section makes the amount of repair activity on the vehicle define whether the vehicle is a lemon. R.C. 1345.73 is a kind of statute of limitations — it sets in well-defined terms the limit of frustration a consumer must endure.
 {¶ 20} "R.C. 1345.73 sets the cutoff point of reasonableness. * * *
 {¶ 21} "The subsection applicable in this case, R.C. 1345.73(B), marks as thirty days the limit that a consumer need tolerate having his or her vehicle out of service in the first year of ownership. Whether the vehicle is driveable after those thirty days is irrelevant. Indeed, the statute speaks in terms of a cumulative thirty days out of service. Thus, the vehicle could have entered the shop on numerous occasions and been repaired each time. The unavailability of the new car is the key element. The fact that a consumer cannot drive a newly purchased vehiclefor a full month in the first year of ownership defines the vehicle as alemon. The General Assembly struck thirty days as the balance betweenwhat a consumer must endure and the time a manufacturer needs to makenecessary repairs. Nothing beyond thirty days is statutorily reasonable.Once the boundaries of reasonableness have been passed, the vehicle atthat point becomes, legally, a lemon." 92 Ohio St.3d at 330-31 (emphasis added).
 {¶ 22} Accordingly, we find Royster both factually similar and controlling on the issues involved in the present case. As a practical matter, there are good reasons not to consider the facts behind a particular delay. As the Ohio Supreme Court noted, in order for the Lemon Law to be effective, it has to be simple and has to have "teeth." Id. If manufacturers and dealers could insert "finger-pointing" issues into these cases, litigation would become unduly prolonged and the effectiveness of the consumer remedy would be destroyed. In fact, this case presents such an example, since it has been stalled in litigation now for two and a half years.
 {¶ 23} Another argument Yamaha makes is that applying the statute in this way creates strict liability. Again, we disagree. The Ohio Supreme Court rejected the idea of strict liability in Royster. The court acknowledged that by leaving little room for interpretation, R.C. 1345.73
also left "little room for litigation." Id. at 331. However, the court also stressed that:
 {¶ 24} "[d]espite its pucker-inducing remedy, the Lemon Law does have protections for manufacturers. The law does not create remedies for buyers who have soured on their new vehicle for cosmetic or other trivial reasons. The vehicle's problem must `substantially impai[r] the use, safety, or value of the motor vehicle to the consumer.' Besides the requirement of a major defect and the right of the manufacturer to preclude recovery by prompt repair, the Lemon Law also provides defenses to manufacturers. A consumer cannot recover under the Lemon Law if the nonconformity is `the result of abuse, neglect, or the unauthorized modification or alteration of a motor vehicle by anyone other than the manufacturer, its agent, or its authorized dealer.'" Id., quoting from R.C. 1345.75.
 {¶ 25} In addition, the manufacturer may show that the defect was not substantial. Id. Consequently, Royster does not impose a strict liability standard on defendants.
 {¶ 26} We should note that Yamaha's argument about irrebuttable presumptions precisely echoes the criticisms expressed by the dissenting judges in Royster. See 92 Ohio St.3d at 332-36 (Cook and Moyer, concurring and dissenting) (Lundberg Stratton, dissenting). All three justices rejected what they felt was a virtually irrebuttable presumption of recovery created by the majority decision. Id. However, whether one agrees or disagrees with the majority opinion, the fact is that the Ohio Supreme Court has taken a very clear position on the matter.
 {¶ 27} In a second issue for review, Yamaha focuses on two primary points: 1) that the trial court improperly used a purely subjective standard to decide if there was a non-conformity that substantially impaired the Road Star's use, value, and safety; and 2) that there were genuine factual disputes about whether a defect substantially impaired the Road Star's use, value, and safety.
 {¶ 28} To be covered under the Lemon Law, a vehicle must have a nonconformity. See R.C. 1345.72(A). Under R.C. 1345.71(E), a nonconformity is defined as "any defect or condition that substantially impairs the use, value, or safety of a motor vehicle to the consumer and does not conform to the express warranty of the manufacturer or distributor." Consistent with this standard, the trial court decided that the Road Star had a defect in the fourth gear that substantially impaired the motorcycle's use, value, or safety. The trial court also said it was applying a subjective standard when making this decision, citing Rothermelv. Safari Motor Coaches, Inc. (July 29, 1994), S.D. Ohio No. 93 CV 7729, 1994 WL 1029332, *4. Yamaha contends this was incorrect because other courts, including our own district, have applied an objective standard.
 {¶ 29} When the United States District Court applied a "subjective standard" in Rothermel, it relied on an appellate decision from the Ohio Sixth District Court of Appeals. See 1994 WL 1029332, at *5, citingBrinkman v. Mazda Motor of America, Inc. (May 13, 1994), Lucas App. No. L-93-142, 1994 WL 193762, *5. In Brinkman, the parties disputed whether the manufacturer offered to replace the hydraulic pump in a brake system that made noises, and whether the plaintiff had refused the offer. After a jury verdict in the manufacturer's favor, the plaintiff claimed on appeal that the trial court had erred by failing to include an instruction about considering the Lemon Law from the perspective of the customer. 1994 WL 197362, at *4. In responding to this argument, the Sixth District Court of Appeals commented that:
 {¶ 30} "[a] consumer meets the burden under R.C. 1345.72(A) by presenting evidence from which a reasonable inference can be made that a specific problem with the vehicle is due to a defective part which is covered by warranty. Reddin v. Toyota Motor Distribs., Inc. (February 22, 1991), Wood App. No. WD-90-2, unreported. Problems accredited to the normal usage of an automobile or those outside any reasonable person's notion of what constitutes an actionable claim are eliminated because the defect or condition must be one that does not conform to any applicable express warranty. R.C. 1345.72(A) * * *." Id. at *5 (citations omitted).
 {¶ 31} In addition, the Sixth District also focused on the wording of R.C. 1345.72(B), which requires a manufacturer to replace or accept return of a motor vehicle if it cannot repair or correct a defect that substantially impairs the vehicle's use, safety or value "`to the consumer.'" Id., quoting from R.C. 1345.72(B). Based on this language, the Sixth District held that the trial court should have included language telling the jury to consider the consumer's perspective. Id. Notably, the Sixth District did not depart from its prior finding that a defect was necessary or that the problem must be one within a reasonable person's notion of an actionable claim. This is consistent with Royster's
requirement of a "major defect," and its statement that the law does not protect buyers who have soured on their vehicles for "cosmetic or trivial reasons." 92 Ohio St.3d at 331.
 {¶ 32} Unlike Yamaha, we do not see any inconsistency in the way these concepts have been applied. For example, one case Yamaha relies on is the Fifth District Court of Appeals' decision in Stepp v. Chrysler Corp.
(Nov. 7, 1996), Knox App. No. 95CA000052, 1996 WL 752794, *1. In Stepp,
the consumer attempted to rely on her own subjective "shaken faith" in her automobile's performance without submitting evidence that a defect existed. Id. The Fifth District rejected this concept, and required objective evidence of an actual defect. This is not inconsistent withRothermel or with Brinkman.
 {¶ 33} In Stepp, the only complaint about the vehicle was a noise that it made when turned to the left. However, the noises were determined to be normal for that particular make and model. The vehicle also never failed, and the consumer did not present any evidence that its value, use, or safety was substantially impaired by the alleged defect. Id.
 {¶ 34} Yamaha also relies on our prior decision in Hill v. Toyota
(Feb. 10, 1995), Montgomery App. No. 14465, 1995 WL 51051. In Hill, we noted that:
 {¶ 35} "[a]t trial, appellant presented considerable testimony, as evidenced by the first 134 pages of the trial transcript, that a defect consisting of a `lag' in the vehicle's transmission existed, that appellant justifiably feared for his safety as a result of the alleged defect, and that the appellee was unable to correct the defect. The appellee then presented testimony, as evidenced in the succeeding 68 pages of the trial transcript, that the `lag', if it actually existed, was really the normal shift pattern of that particular vehicle and that it was `preforming [sic] as designed, that it was simply downshifting and not failing to transfer power from the engine to the driving axle and thus was not impairing the safety of the vehicle.' * * * There was also testimony that this appellant was the only owner who had ever complained about `this condition'. * * * After hearing the extensive testimony from both parties, the trial court simply found that there was not sufficient, credible evidence to sustain appellant's burden to prove a nonconformity." 1995 WL 51051, *3.
 {¶ 36} After reviewing the above evidence, we affirmed the trial court's decision because it was supported by competent, credible evidence. Id. Notably, the plaintiff in Hill lost the case because he failed to prove that the defect was anything more than the vehicle's "normal performance characteristics." McGuire v. American Suzuki MotorCorp., Columbiana App. No. 03 CO 40, 2004-Ohio-6799, at ¶ 48 (discussing and distinguishing Hill). Again, this is consistent with Royster, which requires evidence of a "major defect." 92 Ohio St.3d at 331.
 {¶ 37} Accordingly, we see nothing in the cases cited by Yamaha that casts doubt on the trial court's legal analysis. More important, and contrary to Yamaha's claims, the trial court did not decide the case on a purely subjective basis. Instead, the court relied on the testimony from Yamaha's own representative, who was an expert in the field. There was no dispute in this case that the teeth in fourth gear were chewed off and that the damaged parts in the transmission had to be replaced. According to Yamaha's representative, this defect was not within product specifications and would substantially affect the use of the motorcycle. Deeter also testified that the use, value, and safety of the bike were affected by the transmission defect. However, the trial court did not rely solely on Deeter's subjective testimony.
 {¶ 38} Finally, Yamaha argues that summary judgment was improper even if the trial court could use a purely subjective standard. Yamaha's first point in this regard is that Deeter's only complaint was that the motorcycle made a chattering noise. Yamaha thus compares this case to situations where engine noises, by themselves, are considered insufficient evidence of substantial impairment. We disagree that "noise" was the only defect. Instead, the noise alerted the consumer and the dealer to a defect, i.e., the problem with the transmission. As we said, the testimony of Yamaha's own representative indicates that the defect in the transmission was a substantial impairment.
 {¶ 39} Yamaha further claims that the high amount of mileage on the motorcycle (9,386 miles in nine months) creates an issue of fact. The context of the discussion about high mileage is that it somehow shows a lack of impairment. However, the record does not indicate when the chattering noise began, and there is no evidence that Deeter drove the motorcycle for nine months with a chattering noise present. Instead, the only evidence is that Deeter brought the vehicle for repair and that a major transmission repair was required.
 {¶ 40} Rather than being relevant to the issue of impairment, Yamaha's argument sounds more like a claim that Deeter abused the motorcycle by excessive use. Under R.C. 1345.75(D), a defendant may raise abuse of a vehicle as an affirmative defense to a claim under the Lemon Law. However, Yamaha waived this defense by failing to assert it. Jim's SteakHouse, Inc. v. City of Cleveland, 81 Ohio St.3d 18, 20, 1998-Ohio-1440,688 N.E.2d 506.
 {¶ 41} Even if this defense had been asserted, there was no evidence of abuse, nor was abuse ever mentioned as a cause of the problem. In fact, Yamaha's representative stated that he saw no signs that the motorcycle had been abused or misused. We also note that mileage was never mentioned either during the repair process or in the trial court as a potential issue. Consequently, we find no merit in the claim that the amount of the mileage indicates a lack of substantial impairment.
 {¶ 42} After reviewing the undisputed facts and applicable law, we find that the trial court correctly granted summary judgment against Yamaha. Accordingly, the single assignment of error is overruled, and the judgment of the trial court is affirmed.
Grady, J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).