OPINION
{¶ 1} Appellant, Beau McGuire, appeals the June 17, 2003, decision of the Columbiana County Court of Common Pleas to grant Appellee's motion for judgment notwithstanding the verdict.
 {¶ 2} Appellant filed suit against Appellee, American Suzuki Motor Corp., in November 2001. Appellant claimed that Appellee breached written and implied warranties in violation of the federal Magnuson-Moss Warranty Act (MMWA) and violated R.C. §1345.72, Ohio's Lemon Law.
 {¶ 3} The parties agreed to bifurcate issues as to damages and attorneys' fees from the liability determination. This case proceeded to jury trial as to liability in April of 2003. At the close of Appellant's evidence, Appellee requested a directed verdict on all counts, but was overruled. (Trial Tr. p. 196.) Appellee did not renew its motion at the close of all the evidence. Thereafter, the jury rendered a verdict in Appellant's favor under both statutes. The verdict does not reflect whether they believed Appellee breached written or implied warranties pursuant to the MMWA.
 {¶ 4} The trial court subsequently granted Appellee's motion for judgment notwithstanding the verdict, indicating that:
 {¶ 5} "While it is true that the [Appellant] visited the [Appellee's] authorized dealership complaining of a tapping or ticking noise with his dirt bike within the warranty period, there is no evidence to indicate that what the [Appellant] described as major problems after the warranty period were in any way related to the initial ticking and tapping sounds. Any connection found by the jury between the visits within the warranty period and the post-warranty visits could only have come as a result of speculation on the part of the jury. In other words, there was no testimony to prove a causal connection between the noise and a non-conformity or defect as contemplated by the Lemon Law and the Magnuson-Moss Act.
 {¶ 6} "The [Appellant] takes the position that expert testimony to prove such a causal link is not required. While this Court agrees with that proposition, there nevertheless must be some evidence of such a connection. In a proper case, there may be a Plaintiff who has enough technical knowledge to provide evidence of the link. Here, however, the evidence is insufficient.
 {¶ 7} "* * *
 {¶ 8} "The claims under the Ohio Lemon Law and Magnuson-Moss must also fail because the evidence failed to prove an actual defect or non-conformity. Instead, the evidence identified only symptoms of a potential defect or non-conformity. * * *" (Citations omitted.) (June 17, 2003, Judgment Entry, pp. 2-3.)
 {¶ 9} Appellant's sole assignment of error on appeal asserts:
 {¶ 10} "The trial court erred in sustaining [appellee's] motion for judgment notwithstanding the verdict on [appellant's] lemon law claim and on [appellant's] federal magnuson-moss claims."
 {¶ 11} Appellant divides his assigned error into four sub-parts:
 {¶ 12} "There was sufficient evidence of causal connection between complaints made during the warranty period and a non-conformity and defect as contemplated by the lemon law and Magnuson-Moss Warranty Act to support the jury's verdict in favor of [Appellant] on his lemon law and Magnuson-Moss Warranty Act claims.
 {¶ 13} "The jury properly relied upon repairs made after the expiration of the warranty period to support its verdict in favor of [Appellant] on his lemon law and Magnuson-Moss Warranty Act claims.
 {¶ 14} "Evidence of a causal connection between complaints made during the warranty period and complaints made after the expiration of the warranty period was not necessary to support the jury's verdict in favor of [Appellant] on his lemon law claims.
 {¶ 15} "There was sufficient evidence that the [Appellant's] motorcycle was not fit for the ordinary purpose it was intended for to support the jury's verdict in favor of [Appellant] on his breach of implied warranty claims pursuant [to] the Magnuson-Moss Warranty Act."
 {¶ 16} A motion for judgment notwithstanding the verdict under Civ. R. 50(B), tests the legal sufficiency of the plaintiff's evidence and is a question of law. Thus, an appellate court's standard of review is de novo. Schafer v. RMS Realty
(2000), 138 Ohio App.3d 244, 257-258, 741 N.E.2d 155.
 {¶ 17} In considering a motion for judgment notwithstanding the verdict, a court shall not weigh the evidence or test the credibility of the witnesses. Osler v. Lorain (1986),28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19, syllabus.
 {¶ 18} "[W]here there has been a verdict for plaintiff, the test to be employed by the trial court in determining whether to sustain a motion for judgment notwithstanding the verdict is whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the plaintiff. When so construed, it is clear that the verdict is a reasonable one which the jury could reach from the evidence."Cataland v. Cahill (1984), 13 Ohio App.3d 113, 114,468 N.E.2d 388, 13 O.B.R. 131.
 {¶ 19} As such, the facts herein are construed in Appellant's favor.
 {¶ 20} Appellant's complaint stems from his purchase of a new off-road motorcycle/dirt bike, a Suzuki DRZ400EY, purchased on May 12, 2000, from Andrews Honda in Salem, Ohio. The judge advised the jury that the Andrews Honda dealership was Appellee's agent or authorized representative as a matter of law. (Trial Tr. p. 336.)
 {¶ 21} The bike came with a written six-month manufacturer's warranty, which expired November 12, 2000. The warranty provided that Appellee warrants the bike, "to be free from defect in materials and factory workmanship * * *." (Trial Tr. p. 40, Plaintiff's Exh. 3.) Thus, the manufacturer warranted that the bike was free of defective parts and would operate.
 {¶ 22} Appellant first took the bike to Andrews Honda for service on May 23, 2000, for the bike's "ten-hour check up[.]" Appellant had no complaints at this time. (Trial Tr. pp. 47-48.)
 {¶ 23} The bike's second service visit was on November 8, 2000. This date is crucial, since the six-month warranty expired on November 12, 2000. On this date, Appellant brought the bike to Andrews complaining about the shock feeling loose and heavy while he was riding the bike. Appellant also complained that the bike was making motor noise, or what he described as a ticking noise in the cam area. The cam area is near the very top of the motor. Appellant said that he talked to Andrews employee John Johnston on this date, and Johnston indicated that the noise "wasn't major" and asked whether Appellant had changed the oil. (Trial Tr. pp. 54-56.) Appellant had changed the oil twice already. (Trial Tr. p. 56.) This noise was not affecting the bike's ability to operate in November of 2000. Appellant was unable to state for certain what was causing the engine ticking, but he believed that it was coming from the cam chain tensioner. (Trial Tr. p. 130.)
 {¶ 24} It is of some importance to note that Appellant had experience with motorbikes and their mechanical operation. In addition to the Suzuki dirt bike at issue herein, Appellant also owns a junior dirt bike for his son and a four-wheeler ATV. Appellant does all of the maintenance work on these vehicles and on his nephew's dirt bike. Further, Appellant attended the Columbiana County Career Center for automotive work, and he also has worked on his own cars since he was sixteen years old. (Trial Tr. pp. 35-37, 63.)
 {¶ 25} On February 7, 2001, after the expiration of the six-month warranty, Appellant took the bike to Andrews for service. Appellant complained that it was leaking oil and that the noise was still coming from the same area, but it had gotten louder. The bike was at Andrews for 16 days for repairs. Appellant was not required to pay for these repairs even though they were performed beyond the six-month warranty period. (Trial Tr. pp. 57-60, Plaintiff's Exh. 12.)
 {¶ 26} On April 18, 2001, the bike's engine was still making noise in the same area, and the bike stopped operating while Appellant was riding it. The bike was returned to Andrews for repairs for approximately 19 days. Andrews replaced the gaskets and the cam chain tensioner. The noise disappeared for a short period of time following these repairs. (Trial Tr. pp. 69-71, 137, 222, Plaintiff's Exh. 19.)
 {¶ 27} The bike stopped running again on May 31, 2001. Again, Appellant was riding the bike when it stopped. (Trial Tr. pp. 72-73.) As a result, Andrews had Appellant's bike from May 31, 2001 through July 21, 2001. During this period, Andrews made $1,798.35 in repairs to the bike, replacing the entire top of the engine, which includes the cam chain tensioner. (Trial Tr. p. 155, Plaintiff's Exh. 22.)
 {¶ 28} It is unclear whether the initial ticking noise first noticed in November of 2000 occurred each time the bike stopped operating. The following exchange on this issue occurred during Appellant's direct examination:
 {¶ 29} "Q Now, with relationship to the couple of times you've had it in for the engine stopping on you, on those occasions, were you also experiencing or talking about the tick coming from the same area?
 {¶ 30} "A Yes. It all came from the same area every time.
 {¶ 31} "Q And the tick would accompany the engine stopping on you?
 {¶ 32} "A Could have." (Trial Tr. p. 73.)
 {¶ 33} Suzuki employee, Jerry Monroe, testified that the ticking noise complained of by Appellant in November of 2000 had several potential causes, including a problem with the cam chain tensioner, a necessary valve clearance adjustment, or the medium grade of fuel that Appellant was using. (Trial Tr. p. 277.) When asked directly whether Monroe perceived any connection between the noise Appellant complained about in November of 2000 and his subsequent problems, Monroe did not answer the question. (Trial Tr. p. 278.)
 {¶ 34} Both Plaintiff's Exhibit 23, an in-house Suzuki communication, and Monroe's testimony reflect that the Andrews dealership replaced the cam chain tensioner and repaired engine damage and that Appellant later came back complaining of the same problem. Andrews concluded that the cam chain tensioner adjuster assembly had failed, and they made the repairs as a goodwill gesture. (Trial Tr. p. 155, Plaintiff's Exh. 23.) The actual cause of the cam chain tensioner failure was not conclusively revealed at trial.
 {¶ 35} Appellant's bike was returned to him on July 20, 2001, but he returned it to Andrews on July 31, 2001 complaining that the bike locked up. The July 31, 2001, problems were not related to Appellant's prior problems with the bike or the cam chain tensioner. Andrews again had Appellant's bike for several weeks. During this period, Appellant had someone contact the Ohio Attorney General on his behalf with his complaints about the bike. (Trial Tr. pp. 74-77.) Andrews subsequently raised concerns that the bike may have been abused, and they refused to make any additional repairs without payment from Appellant. (Trial Tr. pp. 75-79.) There was no evidence or testimony supporting that Appellant abused his bike before this July 31, 2001, repair visit.
 {¶ 36} Appellant's first claim for relief is under R.C. §1345.72, Ohio's Lemon Law, which is a consumer protection statute. As such, it must be liberally construed in favor of the consumer. General Motors Acceptance Corp., v. Hollanshead,105 Ohio App.3d 17, 22, 663 N.E.2d 663. It provides in part,
 {¶ 37} "(A) If a new motor vehicle does not conform to anyapplicable express warranty and the consumer reports thenonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date oforiginal delivery * * * the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period." (Emphasis added.)
 {¶ 38} A nonconformity is, "any defect or condition that substantially impairs the use, value, or safety of the motor vehicle to the consumer and does not conform to the express warranty of the manufacturer or distributor." R.C. § 1345.71(E).
 {¶ 39} First, Appellant must have provided sufficient evidence that his new motor vehicle did not conform to Appellee's express warranty, which substantially impaired the bike's use or safety. Secondly, Appellant must have notified Appellee of the nonconformity within one year following the purchase of his bike. Appellant's first year of ownership of the dirt bike expired May 12, 2001.
 {¶ 40} Appellee and the trial court in the instant cause rely on Miller v. DaimlerChrysler Motors Corp. (May 31, 2001), 8th Dist. No. 78300, in asserting that Appellant did not prove a nonconformity with the warranty. Miller held in part that: "intermittent noise and vibrations alone, unaccompanied by any functional impairment, are not circumstantial evidence of a defect * * *." Id. at 4. Miller further stated:
 {¶ 41} "Noise and vibration are not defects themselves. * * * [T]hey are symptoms of a defect.
 {¶ 42} "In some instances, the symptoms may be circumstantial evidence of a defect. * * * [F]or example, where the vehicle would not start. However, the fact that the vehicle makes an intermittent groaning or grinding noise while executing a turn and the steering column vibrates, without evidence of any functional impairment, did not, in itself, prove that the vehicle contained a defect or malfunction. Something more was needed to connect that symptom to a defect in material, workmanship or factory preparation covered by the warranty." Id. (Citation omitted.)
 {¶ 43} Thus, the eighth appellate district agreed that the plaintiff failed to establish that the vehicle was defective.
 {¶ 44} Unlike Miller, supra, the facts in the instant cause depict more than an intermittent noise or symptom of an unidentified defect. In the matter before us, Appellant more closely resembles the hypothetical given in Miller. The record reflects sufficient evidence to support that the engine noise was a symptom of a defect which resulted in functional impairment. While Appellant only identified a symptom of the defect during the six-month warranty period, i.e., the ticking noise in November of 2000, this symptom or noise combined with the bike's subsequent failures to operate are distinguishable from a vibration alone, without any later interference with a vehicle's functioning as was the case in Miller. Id.
 {¶ 45} The Miller court recognized, "symptoms may be circumstantial evidence of a defect. * * * [F]or example, where the vehicle would not start." Id. In the matter before us, the ticking noise was a symptom of the later identified cam chain tensioner failure. Appellant should not be denied recovery under the statute just because the bike's failure to operate did not accompany the initial ticking complaint. He timely identified the ticking noise that was connected to the subsequent part failure. This should be treated no differently than the hypothetical inMiller, where the court stated that there would be a cause of action when a noise or vibration felt during the warranty period was accompanied by a failure of the vehicle to start, even when there was no diagnosis of the cause of said failure during the warranty period.
 {¶ 46} The Miller court referred to Reddin v. ToyotaMotors Distributors, (Feb. 22, 1991), 6th Dist. No. WD-90-2.Reddin specifically held,
 {¶ 47} "The consumer bears the burden of presenting evidence from which a reasonable inference can be made that a specific problem with the vehicle is due to a defective part which is covered by the warranty. Nothing in the statute imposes a higher burden on the consumer to eliminate all possible causes of the problem." Id. at 5.
 {¶ 48} Other cases relying on Reddin, supra, include Hillv. Toyota Motor Sales, U.S.A., Inc. (Feb. 10, 1995), 2nd Dist. No. CA 14465, and Smith v. Toyota, U.S.A. (Feb. 24, 1994), 4th Dist. No. 2139. In both Hill and Smith, like Miller, supra, the plaintiffs failed to prove that the alleged defects were anything more than the vehicles' normal performance characteristics. Hill at 3; Smith at 3. In the instant case there was a symptom and defect with the cam chain tensioner. Andrews concluded that the part failed.
 {¶ 49} "`Circumstantial evidence' is the proof of certain facts and circumstances in a given case, from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. Black's Law Dictionary (5 Ed. 1979) 221.
 {¶ 50} "It is not essential that there should be a mathematical demonstration or direct evidence of every essential fact in a case, but the circumstances, to have the effect of establishing an allegation of fact, must be such as to make the fact alleged appear more probable than any other; the fact in issue must be the most natural inference from the facts proved; it is not sufficient if the conclusion must rest wholly upon guess or conjecture." State v. Duganitz (1991),76 Ohio App.3d 363, 367, 601 N.E.2d 642.
 {¶ 51} Here, Appellant testified that he believed that the cam tensioner caused this recurring ticking noise in the cam area. Further, Andrews subsequently replaced the cam chain tensioner adjuster assembly twice. (Trial Tr. pp. 71, 155, 222.) In addition, Monroe testified that the cam chain tensioner was a potential cause of the ticking noise in the cam area. (Trial Tr. p. 277.)
 {¶ 52} Appellant's testimony that he believed the November of 2000 ticking noise was from the cam chain tensioner; Monroe's testimony that the described noise could have been caused by the cam chain tensioner; Andrews' conclusion that the cam chain tensioner adjuster assembly had failed and its decisions to replace the cam chain tensioner twice in a three-month period constitute sufficient circumstantial proof for the jury to infer that the eventual replacements of the cam chain tensioner were related to Appellant's initial engine ticking complaint.
 {¶ 53} Further, Appellant's testimony that the bike stopped operating while he was riding it is sufficient to establish the defect impaired the bike's use, value, or safety. Absent the bike's failure to operate, Appellant's testimony about the ticking noise alone would be insufficient to establish substantial impairment of the use, value, or safety of the bike as a nonconformity is defined. However, the bike became inoperable. Thus, the foregoing satisfies Appellant's burden of proving a nonconformity.
 {¶ 54} In addition, both replacements of the cam chain tensioner occurred before May 12, 2001, i.e., within one year following Appellant's purchase of the bike.
 {¶ 55} Based on the foregoing, it was reasonable for the jury to find that Appellant did find and report a defect during the six-month warranty, which was later confirmed as a nonconformity by Andrews within the one-year period following his purchase of the bike.
 {¶ 56} We recognize that Appellant's case certainly could have been more compelling had he retained a mechanic expert to testify on his behalf and to conclude with certainty that the November, 2000, cam area ticking noise was caused by a defective cam chain tensioner that also later caused the bike to fail. Appellant did not provide this testimony, but it is axiomatic that, "[t]he weight given to the evidence, and which of competing inferences should be drawn from that evidence, is a matter primarily for the trier of fact." Boyle v. Daimler ChryslerCorporation, 2nd Dist. No. 2001-CA-81, 2002-Ohio-4199, ¶ 52, citing, State v. DeHass (1967), 10 Ohio St.2d 230,39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Appellant's testimony combined with the other evidence constituted sufficient circumstantial evidence to send this issue to the jury.
 {¶ 57} It should also be noted that both the trial court and Appellee rely on the Ohio Supreme Court's decision in State FarmFire Cas. Co. v. Chrysler Corp. (1988), 37 Ohio St.3d 1,523 N.E.2d 489, for the proposition that proof of causation is indispensable in breach of warranty claims, and that Appellant in this matter failed to provide sufficient proof of causation. However, the court in State Farm was only addressing the plaintiff's negligent repair and products liability claims, and not the breach of warranty claims. Id. at 5. Thus, State Farm
is inapplicable here. Ohio's Lemon Law statute does not require expert testimony to establish causation of a nonconformity. R.C. § 1345.72. Further, R.C. § 1345.75(D) provides that, "[i]t is an affirmative defense to any claim under this section that a nonconformity is the result of abuse, neglect, or the unauthorized modification or alteration of a motor vehicle by anyone other than the manufacturer, its agent, or its authorized dealer." Thus, the seller has the burden to prove that a defect or nonconformity was caused by something other than a defect in material or workmanship. Appellee did not establish any other cause of the defect in the instant case.
 {¶ 58} Of course, Appellant also must establish that Appellee had reasonable opportunity to repair the dirt bike. R.C. §1345.72(B) gives sellers an opportunity to preclude recovery under the Lemon Law by promptly repairing the vehicle,
 {¶ 59} "(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts, the manufacturer, at the consumer's option and subject to division (D) of this section, either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the following:"
 {¶ 60} R.C. § 1345.73 defines what constitutes a reasonable number of attempts to conform a vehicle to the warranty for R.C. § 1345.72(B) purposes:
 {¶ 61} "It shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following apply:
 {¶ 62} "* * *
 {¶ 63} "(B) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days;"
 {¶ 64} The Ohio Supreme Court has held that, "[a] consumer enjoys a presumption of recovery under the Lemon Law if his or her vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days in the first year of ownership regardless of whether the vehicle was successfully repaired at some point beyond that thirty-day period." Royster v. Toyota Motor Sales (2001),92 Ohio St.3d 327, 750 N.E.2d 531. The plaintiff in Royster was able to recover under the statute even though the dealership had diagnosed the problem with his vehicle, but it had difficulty and was delayed in locating the appropriate replacement part. By this time, the vehicle was unavailable to the plaintiff for fifty-five days. Id.
 {¶ 65} Appellant's bike was at Andrews for repairs for approximately 35 days in the first year that Appellant owned the bike. Appellant's complaints in February of 2001 included that the bike was still making the cam area noise and it had gotten louder. Appellant's complaints in April of 2001 were that the bike's engine was again making noise in the same area and that the bike stopped operating while Appellant was riding it. (Trial Tr. pp. 59-60, 70-71.)
 {¶ 66} Since Appellant's bike was in for repairs regarding similar complaints for more than thirty days during Appellant's first year of ownership, R.C. § 1345.73(B) presumes that Andrews and Suzuki had a reasonable opportunity to bring Appellant's dirt bike in conformity with the express warranty.
 {¶ 67} Construing the evidence in the instant cause in a light most favorable to Appellant, the record supports the jury's verdict in favor of Appellant's lemon law claim.
 {¶ 68} Appellant's second and third claims are under the federal statute, the Magnuson-Moss Warranty Act. He first seeks to recover under the MMWA for Suzuki's alleged violation of the implied warranty of merchantability. Appellant's second claim under the MMWA alleges a breach of Suzuki's express written warranty.
 {¶ 69} 15 U.S.C. § 2310(d)(1) provides the means for Appellant's MMWA claims:
 {¶ 70} "* * * a consumer who is damaged by the failure of a * * * warrantor * * * to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief —"
 {¶ 71} As for Appellant's claim that Suzuki violated the implied warranty of merchantability, R.C. § 1302.27(A) implies a warranty that goods sold shall be merchantable. In order for goods to be merchantable, they must be, "fit for the ordinary purposes for which such goods are used[.]" R.C. § 1302.27(B)(3).
 {¶ 72} In Bolt v. Yamaha Motor Corp., 3rd Dist. No. 8-03-17, 2004-Ohio-1205, the appellate court affirmed a trial court decision following a bench trial that the plaintiff established sufficient evidence to form a prima facie breach of the implied warranty of merchantability case:
 {¶ 73} "At trial, Bolt and three other witnesses with extensive boating knowledge, testified that the boat was consistently hard to start and would stall out at unexpected times. The witnesses also testified that the boat could not be used for water skiing or tubing because of the danger that the boat would stall out. Each witness testified that Bolt operated the boat in an acceptable manner and did nothing out of the ordinary which would cause the engines to stall out. * * * Furthermore, the boat even stalled out on Yamaha's own mechanical expert when he took it out for a test drive. * * *
 {¶ 74} "Bolt produced sufficient competent credible evidence to show that the boat was not fit for the ordinary purpose for which it was designed." Id. at ¶ 20-21.
 {¶ 75} As earlier discussed, Appellant testified that his bike was repeatedly making a ticking engine noise in the cam area. He further testified that the bike subsequently stopped working while he was operating it. In addition, there was evidence reflecting that the bike's cam chain tensioner was replaced twice, but Appellant was still having problems with the bike. However, and as noted previously, the July 31, 2001, complaints were not related to Appellant's prior problems with the cam chain tensioner adjuster. Further, Appellee did present evidence that the July 31, 2001, problems were a result of abuse or misuse of the bike. (Trial Tr. pp. 225-226.)
 {¶ 76} The court in Miller v. DaimlerChrysler Motors Corp.,
8th Dist. No. 78300, held that the plaintiff failed to prove that his vehicle was not fit for the car's ordinary purpose, and thus his alleged breach of the implied warranty of merchantability under the MMWA failed. The Miller court concluded, "as a matter of law, intermittent noise and vibration which do not interfere with the functioning of the vehicle do not render a vehicle unfit for its ordinary purpose." Id. at 5. (Citation omitted.)
 {¶ 77} The First District Court of Appeals in Indiana has recognized the following basic standards with regard to breach of the implied warranty of merchantability claims:
 {¶ 78} "First, it is not necessary to prove the specific defect in the product. * * *
 {¶ 79} "Second, breach of implied warranty of merchantability may be established by circumstantial evidence. * * *
 {¶ 80} "Third, a malfunction itself, in the absence of abnormal use and reasonable secondary causes, may be sufficient evidence of a defect to make the existence of a defect a question for the jury. * * * Repeated malfunctions particularly have been held sufficient to establish a breach of the implied warranty of merchantability. * * *
 {¶ 81} "Fourth, expert testimony is not necessary to establish the breach of warranty." A.A.A. Exteriors, Inc. v. DonMahurin Chevrolet Oldsmobile, Inc. (Ind.App. 1 Dist. 1981),429 N.E.2d 975, 978, 33 U.C.C. Rep.Serv. 252.
 {¶ 82} Based on our conclusion that Appellant provided sufficient evidence in support of his first claim under Ohio's Lemon Law, it follows that there was also sufficient evidence supporting his MMWA claim alleging a breach of the implied warranty of merchantability. A dirt bike that repeatedly fails and that is making recurring ticking noises in the cam area is not fit for its ordinary purpose. As such, this issue was appropriately considered by the jury.
 {¶ 83} Appellant next asserts a MMWA breach of written warranty claim. In order to prove a breach of a written warranty under MMWA, one must establish that a written warranty exists and that the manufacturer failed to remedy a defect after being afforded a reasonable number of attempts. 15 U.S.C. 2301, et seq.
 {¶ 84} "The overall function of the Act was to require warrantors to fully disclose the terms and conditions of their written warranties relating to certain consumer goods so that consumers could make informed choices regarding the purchase of such consumer goods. Therefore, the Act does not require that a [written] warranty be given, only that if a [written] warranty was provided that it comply with the provisions of the Act." (Citations omitted.) Haynes v. George Ballas Buick-Gmc Truck
(Dec. 21, 1990), 6th Dist. No. L-89-168, 9.
 {¶ 85} Based on this Court's conclusion that Appellant established sufficient evidence relative to his Ohio Lemon Law claim, this Court also finds that the jury had sufficient evidence before it to support Appellee's breach under the federal MMWA. Both hinge on a violation of an express warranty and the manufacturer's failure to repair the vehicle within a reasonable time.
 {¶ 86} Based on the foregoing, Appellant's MMWA claims had merit.
 {¶ 87} In construing the evidence most strongly in Appellant's favor, Appellee is not entitled to judgment as a matter of law. The jury's verdict in Appellant's favor was reasonable. Thus, the trial court's decision to grant Appellee's motion for judgment notwithstanding the jury's verdict was in error. As such, this Court hereby reverses the trial court's decision and reinstates the jury verdict herein.
Vukovich, J., concurs., DeGenaro, J., concurs.