IAMS, Appellant,

v.

DAIMLERCHRYSLER CORPORATION, Appellee.

[Cite as *Iams v. DaimlerChrysler Corp.*, 174 Ohio App.3d 537, 2007-Ohio-6709.]

Court of Appeals of Ohio,
Third District, Hardin County.

No. 6–07–08.

Decided Dec. 17, 2007.

538

Mitchel E. Luxenburg and David B. Levin, for appellant.

Adam C. Stacy and John C. Leach, for appellee.

---

PRESTON, Judge.

## A. Facts

{¶ 1} Plaintiff-appellant, Craig Iams, appeals the judgment of the Hardin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, DaimlerChrysler Corporation (hereinafter "Chrysler"), on his Lemon Law claim and Magnuson–Moss Warranty Act (hereinafter "MMWA") claims. For reasons explained herein, we affirm.

{¶ 2} On October 29, 2004,[1] Iams purchased a new 2005 Jeep Wrangler, manufactured by Chrysler with a three-year or 36,000–mile warranty. Around December 2004, Iams noticed that the rear lift-gate latch would pop open when the doors on the vehicle were closed, due to the air pressure inside the vehicle. As a result of this problem, the vehicle was noisy when driven.

{¶ 3} On January 29, 2005, Iams presented the Wrangler to an authorized Chrysler dealership for repair. The problem was fixed for a period of time, but Iams subsequently brought the Wrangler back to Chrysler on April 26, 2005, for the same problem. Again the problem was fixed for a period of time, and, again, Iams returned the vehicle for the same repair on June 3, 2005. Iams brought the Wrangler to Chrysler a fourth time for repairs on July 11, 2005.

{¶ 4} On September 25, 2005, Iams filed a three-count complaint against Chrysler pursuant to Ohio's Lemon Law and breaches of express and implied warranties under the MMWA. On or about October 26, 2005, Chrysler filed its answer denying the complaint's substantive allegations.

---

1. The briefs of both parties indicate October 29, 2004, as the purchase date; however, it should be noted that the original complaint provided November 21, 2004, as the purchase date. This is noted to account for the discrepancy in the record; however, it does not affect the outcome in this case since in either event, the vehicle was taken to the dealership four times within the first year of ownership.

{¶ 5} On August 4, 2006, Iams filed a motion for partial summary judgment on Count I, relating to breach of express warranty under the MMWA, and Count III, relating to Ohio's Lemon Law. That same day, Chrysler filed a motion for partial summary judgment as to Count III as well.

{¶ 6} On October 27, 2006, the trial court denied Iams's motion for partial summary judgment and granted Chrysler's motion. Although Chrysler moved for partial summary judgment, the trial court mistakenly dismissed the entire case on November 3, 2006. On November 28, 2006, the trial court entered a corrected judgment entry reinstating complaint Counts I and II, relating to the MMWA claims.

{¶ 7} On December 16, 2006, Chrysler filed a motion for summary judgment on the remaining counts of breach of express and implied warranty under the MMWA. On December 28, 2006, Iams filed an opposition brief, and on January 11, 2007, the trial court granted Chrysler's motion, disposing of the complaint's remaining counts.

{¶ 8} On February 28, 2007, the trial court entered its final order granting Chrysler summary judgment on all counts and dismissing Iams's claims. On March 9, 2007, Iams timely filed a notice of appeal to this court, asserting one assignment of error.

## Assignment of Error No. I

The trial court erred in granting summary judgment to appellee on appellant's Lemon Law claim and on appellant's federal Magnuson–Moss claims and in denying appellant's motion for summary judgment on the same claims.

## B.  Standard of Review

{¶ 9} An appellate court reviews a grant or denial of summary judgment pursuant to Civ.R. 56(C) de novo. *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 127, 752 N.E.2d 962, citing *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, citing *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. To prevail under Civ.R. 56(C), a party must show: (1) there are no genuine issues of material fact, (2) it appears from the evidence that reasonable minds can reach but one conclusion when viewing evidence in the nonmoving party's favor, and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Shaffer,* 90 Ohio St.3d at 390, 738 N.E.2d 1243; *Grafton,* 77 Ohio St.3d at 105, 671 N.E.2d 241.

{¶ 10} Material facts have been identified as those facts "that might affect the outcome of the suit under the governing law." *Turner v. Turner*

(1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]' " Id., quoting *Liberty Lobby, Inc.,* 477 U.S. at 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 11} Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 218, 520 N.E.2d 198. "The purpose of summary judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." *Lakota Local School Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 643, 671 N.E.2d 578.

## C.  Analysis

{¶ 12} We now consider whether, as a matter of law, Iams established a valid claim under Ohio's Lemon Law, the MMWA, or both. We conclude that Iams has not established valid claims under either legal cause of action.

### 1.  Lemon Law

{¶ 13} To prevail under the Lemon Law, plaintiff must establish: (1) he was the owner of a vehicle covered by a written warranty, (2) the motor vehicle does not conform to the applicable expressed warranty, (3) he reported the nonconformity to the manufacturer or manufacturer's authorized dealer within one year following the original date of delivery or the first 18,000 miles of operation, whichever is earlier, and (4) the manufacturer or authorized dealer was unable to conform the motor vehicle to the express warranty by repairing or correcting a defect that substantially impaired the use, safety, or value of the motor vehicle, after a reasonable number of repair attempts. *Dressler v. DaimlerChrysler Corp.,* 5th Dist. No. 2005CA0115, 2006-Ohio-4448, 2006 WL 2474337, ¶ 19.[2]

{¶ 14} Iams argues that he presented evidence sufficient to establish a valid Lemon Law claim; and therefore, was entitled to summary judgment. Chrysler

---

**2.**  Other courts have a variation of these elements. See, e.g., *Gray v. Chrysler Corp.* (Apr. 11, 2001), 9th Dist. No. 20204, 2001 WL 358389, at *2 (Lemon Law elements are "(1) the nonconforming motor vehicle; (2) the consumer's obligation to report the nonconformity in a timely fashion; and, (3) the manufacturer's obligation to repair the problem within a reasonable number of attempts or refund the consumer's costs. A nonconforming motor vehicle is one that, from the consumer's perspective, suffers from any defect or condition which substantially impairs its use, value, or safety and does not conform to the express warranty of the manufacturer or distributor"). Throughout this opinion, however, we will refer to the elements articulated in *Dressler,* 2006-Ohio-4448, 2006 WL 2474337.

does not dispute that Iams presented evidence sufficient to meet several Lemon Law elements, but Chrysler maintains that Iams failed to show that the 2005 Jeep Wrangler's alleged condition or defect was "nonconforming," as defined under the Lemon Law. Specifically, Chrysler argues that the defect did not substantially impair the use, safety, or value of the motor vehicle. Chrysler further argues that the Lemon Law's substantial-impairment requirement is objective, measured in terms of a reasonable person.

{¶ 15} In response, Iams argues that the substantial-impairment requirement is subjective, measured from the individual consumer's perspective. In support of this proposition, Iams points to the statutory language, which provides that the defect or condition must substantially impair the use, safety, or value of the vehicle "to the consumer." Iams also cites several Ohio appellate court decisions that support his interpretation. Since he submitted an affidavit alleging that the 2005 Jeep Wrangler's defect or condition substantially impaired the vehicle's use and value *to him*, Iams argues that he has met this Lemon Law element, as well as all the remaining elements, and is therefore entitled to summary judgment.

{¶ 16} Therefore, this case presents the following issues: first, whether the Lemon Law's substantial-impairment standard is subjective, objective, or some combination of both; and second, whether Iams has met the applicable standard in this case. We conclude that the Lemon Law's substantial-impairment standard is objective, measured in terms of a reasonable person, and that the Wrangler's defect is not a substantial impairment in its value, use, or safety. Consequently, we must affirm the trial courts grant of summary judgment on Iams's Lemon Law claim.

a. Plain Language

██ {¶ 17} Our inquiry begins with the statute's plain language, and if that language is clear and unambiguous, it is our duty to give effect to the language as written. *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 106 Ohio St.3d 70, 2005-Ohio-3807, 831 N.E.2d 987, ¶ 38. Ambiguity exists, however, if the statute's language is susceptible to more than one reasonable interpretation. *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 40, 741 N.E.2d 121.

{¶ 18} Ohio's Lemon Law is codified in R.C. 1345.71, et seq., which provides:

(A) If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express

warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.

(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition that substantially impairs the use, safety, or value of the motor vehicle to the consumer after a reasonable number of repair attempts, the manufacturer shall, at the consumers option, and subject to division (D) of this section replace the motor vehicle with a new motor vehicle acceptable to the consumer or accept return of the vehicle from the consumer and refund each of the following:

(1) The full purchase price including, but not limited to, charges for undercoating, transportation, and installed options;

(2) All collateral charges, including but not limited to, sales tax, license and registration fees, and similar government charges;

(3) All finance charges incurred by the consumer;

(4) All incidental damages, including any reasonable fees charged by the lender for making or canceling the loan.* * *

R.C. 1345.72. "Nonconformity" is defined as "any defect or condition that substantially impairs the use, value, or safety of a motor vehicle *to the consumer* and does not conform to the express warranty of the manufacturer or distributor." (Emphasis added). R.C. 1345.71(E).

{¶ 19} As explained above, the parties do not dispute whether the Wrangler is under warranty (prong one of the Lemon Law) or whether it was presented to the manufacturer's authorized dealer for repair in a timely fashion (prong three of the Lemon Law). The dispute is whether the Wrangler's defect or condition renders the vehicle nonconforming as defined in R.C. 1345.71(E) (prongs two and four of the Lemon Law).

{¶ 20} Iams argues that the plain meaning of the phrase "to the consumer" as it appears in R.C. 1345.71(E) signifies that the substantial-impairment requirement is subjective, and therefore, the motor vehicle's diminished use, value, or safety is measured from the affected consumer's perspective. We disagree that this is necessarily the meaning of the statutory language. Although Iams's interpretation is certainly a reasonable one, we are not persuaded that R.C. 1345.72(B) or 1345.71(E)'s language mandates a subjective standard.

{¶ 21} Ambiguity exists if the statute's language is susceptible to more than one reasonable interpretation. *Bailey,* 91 Ohio St.3d at 40, 741 N.E.2d 121. It is also reasonable to conclude that the Lemon law's phrase "to the consumer" simply signifies that the consumer must be the party affected by the alleged defect. The ambiguity of this phrase occurs because the word "to" is inherently

ambiguous. In fact, Webster's Third New International Dictionary provides over 14 variations in use for the word "to," each with its own variations in use, for a total of over 40 different uses of the word "to" (3d Ed.Rev.2002) 2401–2402. When the word "to" precedes a personal object word, it can be translated "in the opinion of" a particular person, as Iams argues. On the other hand, used this same way, it can also mean that person is, as a matter of fact, affected by the subject matter of the sentence. Id. See also The American Heritage Dictionary (2d College Ed.1985) 1274.

{¶ 22} For example, consider the sentence: "The lengthy drought season is especially devastating to the local farmers." Although local farmers may, in fact, hold the opinion that the increased droughts are "especially devastating" to them, the essence of this statement is that local farmers are the "especially" affected objects of the drought season, the sentence's subject matter. The statement has nothing to do with the opinion of the local farmer; rather, it is an independent evaluation of the drought-stricken farmer's plight. Furthermore, as in the phrase "to the consumer" in the Lemon Law, nothing in the example statement prevents an objective review. That is, one can review the facts of the situation and determine whether the local farmer is, as a matter of fact, "especially" devastated, or whether, perhaps, some other group or individual is even more devastated than the local farmer. In the same way, the phrase "to the consumer" could reasonably have nothing to do with the consumer's subjective opinion; but rather, simply identify that the consumer is the affected object of the vehicle's diminished use, safety, or value.

{¶ 23} Given that at least two reasonable interpretations of the phrase "to the consumer" exist, we find that the statute's language is ambiguous. *Bailey*, 91 Ohio St.3d at 40, 741 N.E.2d 121. Since the language is ambiguous, our analysis must continue. First, we examine the case law.

b. Case Law

{¶ 24} Ohio appellate courts have reached differing conclusions on the interpretation of the word "nonconformity" under the Lemon Law. Some appellate courts have found that the substantial-impairment requirement is a subjective test, while others have implicitly found the requirement is objective. We begin with those cases finding the requirement subjective.

{¶ 25} One of the first cases interpreting the Lemon Law's substantial-impairment requirement to be subjective, and on which Iams relies, is *Brinkman v. Mazda Motor of Am., Inc.* (May 13, 1994), 6th Dist. No. L–93–142, 1994 WL 193762. Appellant Brinkman appealed a jury verdict in favor of Mazda on her Lemon Law claim, arguing that the trial court erred by failing to include the words "to the consumer" or "to the plaintiff" in its jury instructions relating to

the Lemon Law's substantial-impairment requirement to show a nonconformity. Id. at *1, 3. The Ohio Court of Appeals for the Sixth District agreed, stating:

[T]he clear and unambiguous language of R.C. 1345.72(B) requires that the determination as to whether the impairment in the vehicles use, safety, or value is deemed substantial necessarily depends on an examination of the consumer's perspective; and (2) the court erred by not including the language "to the consumer" or "to the plaintiff" in its instructions and interrogatories * * *.

The Sixth District, then, reversed and remanded for a new trial. Id. at *5.

{¶ 26} The Court of Appeals for the Ninth District has cited *Brinkman* in support of its conclusion that the Lemon Law's substantial-impairment requirement is subjective. *Gray v. Chrysler Corp.* (Apr. 11, 2001), 9th Dist. No. 20204, 2001 WL 358389, at *2. In *Gray*, the consumer was awarded summary judgment on her Lemon Law claim. Id. at *1. On appeal, Chrysler argued, in part, that Gray's affidavit claiming that the vehicle's use and value had been substantially impaired was self-serving and unverified and therefore, insufficient evidence existed for the trial court to award summary judgment in her favor. Id. The court in *Gray* disagreed, and stated that "[a] nonconforming motor vehicle is one that, *from the consumer's perspective,* suffers from any defect or condition which substantially impairs its use, value, or safety and does not conform to the express warranty of the manufacturer or distributor." (Emphasis added.) Id. at *2, citing *Brinkman.*

{¶ 27} The court found that the plaintiff had fulfilled her *Dresher* summary-judgment burden to produce evidence on each Lemon Law element and that defendant failed to fulfill its reciprocal *Dresher* burden. Id. at *3, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. The court in *Gray* found, as a result, that the trial court did not err in granting plaintiff summary judgment.

{¶ 28} The Court of Appeals for the Fifth District has also found that the Lemon Law's substantial-impairment requirement is subjective. *Lesjak v. Forest River,* 5th Dist. No. 2003AP050037, 2004-Ohio-245, 2003 WL 23192529. Plaintiffs in *Lesjak* purchased a motor home that had leaking windows. Id. at ¶ 3. Following a remand of the case, plaintiffs filed a motion for reconsideration of summary judgment, which was granted. Id. at ¶ 5. Manufacturer Forest River filed an appeal asserting, in part, that plaintiffs' affidavit alleging that the defect substantially impaired the motor home's use and value to them was insufficient to establish nonconformity under the Lemon Law. Id. at ¶ 13.

{¶ 29} The court in *Lesjak* disagreed and stated: "It is clear * * * whether the use, safety or value of the motor vehicle is substantially impaired is to be determined according to a subjective standard." Id. at ¶ 23, citing *Rothermel v. Safari Motor Coaches* (N.D.Ohio, 1994), 1994 WL 1029332. The court then found that because the manufacturer had failed to present any evidence to refute

plaintiffs' substantial-impairment claims, the trial court did not err in granting summary judgment in plaintiffs favor. Id. at ¶ 27.

{¶ 30} On the other hand, several Ohio courts have impliedly found that the Lemon Law's substantial-impairment requirement is an objective requirement. For example, the Ohio Supreme Court noted:

> The [Lemon] law does not create remedies for buyers who have soured on their new vehicle for *cosmetic or other trivial reasons.* The vehicle's problem must "substantially impai[r] the use, safety, or value of the motor vehicle to the consumer." Besides the requirement of a *major defect* and the right of the manufacturer to preclude recovery by prompt repair, the Lemon Law also provides defenses to manufacturers.

(Emphasis added.) *Royster v. Toyota* (2001), 92 Ohio St.3d 327, 331, 750 N.E.2d 531 (a leaking head gasket "certainly maintains the look, feel, and potential expense of a disaster" and meets the statutory definition of a substantial impairment). This court has likewise found that a "reasonable jury" could not find that "fit and finish" defects, such as adjustments to moldings, windows, bumpers, and headlights had substantially impaired the use, value, or safety of the vehicle under the Lemon Law. *Gen. Motors Acceptance Corp. v. Hollanshead* (1995), 105 Ohio App.3d 17, 23, 663 N.E.2d 663.

{¶ 31} In *Stepp v. Chrysler,* the Court of Appeals for the Fifth District found that a consumer's shaken faith did not establish a substantial impairment, and further stated that the requirement of nonconformity eliminates "claims outside a reasonable persons notion of what constitutes an actionable claim." (Nov. 7, 1996) 5th Dist. No. 95CA000052, 1996 WL 752794, at *1–2. In *Kleinman v. Chrysler Motor Corp.,* the Court of Appeals for the Fourth District found that noise alone, without evidence that the noise was not a normal characteristic of the vehicle model was insufficient to establish nonconformity. (May 26, 1995), 4th Dist. No. 94 CA 2234, 1995 WL 329578 at *5. Arriving at its conclusion, the court in *Kleinman* noted, "Problems accredited to the normal usage of an automobile *or those outside any reasonable person's notion of what constitutes an actionable claim* are eliminated because the defect or condition must be one that does not conform to any applicable express warranty." (Emphasis added.) Id. at *4, citing R.C. 1345.72(A); *Lyons v. Cross Rds. Lincoln–Mercury, Inc.* (1990), 61 Ohio Misc.2d 180, 576 N.E.2d 835; *Smith v. Toyota* (Feb. 24, 1994), 4th Dist. No. 2139, 1994 WL 69881.

{¶ 32} In *Deeter v. Yamaha Motor Corp., USA,* the Court of Appeals for the Second District affirmed a grant of summary judgment in the consumer's favor on a motorcycle Lemon Law claim. 2d Dist. No. 20686, 2005-Ohio-1931, 2005 WL 940902. Yamaha appealed and argued, in part, that the trial court erred in applying *Brinkman's* purely subjective standard in determining that the alleged

defect substantially impaired the motorcycle's use, value, or safety. Id. at ¶ 27. The Court of Appeals disagreed that the trial court had relied solely on the consumer's subjective beliefs; rather, it found that the trial court additionally relied upon Yamaha's own expert testimony that parts of the motorcycle's transmission had to be replaced. Id. at ¶ 37. In rendering its decision and interpreting *Brinkman*, the Second District remarked:

> Notably, the Sixth District [in *Brinkman*] did not depart from its prior finding that a defect was necessary *or that the problem must be one within a reasonable person's notion of an actionable claim.* This is consistent with *Royster's* requirement of a *"major defect,"* and its statement that the law does not protect buyers who have soured on their vehicles for "cosmetic or trivial reasons." 92 Ohio St.3d at 331, 750 N.E.2d 531.

Id. at ¶ 31.

{¶ 33} Other appellate courts have similarly found that certain defects did not substantially impair a vehicle's use, value, or safety, and therefore, they support our finding that the test is objective. For example, the Court of Appeals for the Seventh District found that a consumer's testimony regarding a ticking noise would be insufficient to establish a substantial impairment of the use, value, or safety of a motorcycle as "nonconformity" is defined, but evidence that the bike was inoperable was sufficient. *McGuire v. Am. Suzuki Motor Corp.*, 7th Dist. No. 03 CO 40, 2004-Ohio-6799, 2004 WL 2913952, ¶ 53. Likewise, the Court of Appeals for the Eighth District found that intermittent groaning and grinding noises and steering column vibrations did not substantially impair a vehicle's use, value, or safety. *Miller v. DaimlerChrysler Motors Corp.* (May 31, 2001), 8th Dist. No. 78300, 2001 WL 587496, at *4. The Eighth District has also found that an illuminated check-engine light, by itself, did not substantially impair a vehicle's use, value, or safety when the evidence showed that the vehicle had never broken down, could be fixed for a minimal amount, and did not cause the plaintiff to fear for her safety. *LaBonte v. Ford Motor Co.* (Oct. 7, 1999), 8th Dist. No. 74855, 1999 WL 809808, at *5.

{¶ 34} In conclusion, the case law reveals differing views regarding the nature of the substantial-impairment requirement. The Fifth, Sixth, and Ninth Districts have found that the Lemon Law's plain language calls for a subjective test. *Lesjak*, 2004-Ohio-245, 2003 WL 23192529; *Brinkman*, 6th Dist. No. L–93–142, 1994 WL 193762; *Gray*, 9th Dist. No. 20204, 2001 WL 358389. On the other hand, the Ohio Supreme Court has indicated that the Lemon Law excludes claims outside "a reasonable person's notion of what constitutes an actionable claim," and that valid Lemon law claims involve "major defects" and not "cosmetic or trivial" reasons. *Royster*, 92 Ohio St.3d at 331, 750 N.E.2d 531. Furthermore, several courts, including this court, have independently determined as a matter of

law that certain defects did not substantially impair a vehicle's use, value, or safety, which indicates an objective standard. *Deeter*, 2d Dist. No. 20686, 2005-Ohio-1931; *Hollanshead*, 105 Ohio App.3d 17, 663 N.E.2d 663; *Kleinman*, 4th Dist. No. 94 CA 2234, 1995 WL 329578; *Smith*, 4th Dist. No. 2139, 1994 WL 69881; *Stepp*, 5th Dist. No. 95CA000052, 1996 WL 752794; *McGuire*, 7th Dist. No. 03 CO 40, 2004-Ohio-6799, 2004 WL 2913952; *LaBonte*, 8th Dist. No. 74855, 1999 WL 809808; *Miller*, 8th Dist. No. 78300, 2001 WL 587496.

c.  Consequences of a Subjective Versus an Objective Interpretation

{¶ 35} The primary goal of statutory interpretation is to arrive at the legislative intent. *Bailey*, 91 Ohio St.3d at 39, 741 N.E.2d 121. The starting point is the statute's language; if the language is plain and unambiguous, the inquiry is over, and the language must be applied as written. Id., citing *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 304 N.E.2d 378; *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463. However, when the statute's language is ambiguous, the court may consider several factors, "including the object sought to be obtained, circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction." Id. at 40, 741 N.E.2d 121, citing R.C. 1.49; *State v. Jordan* (2000), 89 Ohio St.3d 488, 492, 733 N.E.2d 601.

{¶ 36} We conclude that an objective test best serves the Lemon Law's ends of protecting consumers while preventing frivolous litigation. The Ohio Lemon Law is most certainly a consumer-protection law; however, as the Ohio Supreme Court has noted, the law was not enacted for "cosmetic or other trivial" reasons. *Royster*, 92 Ohio St.3d at 331, 750 N.E.2d 531. An objective test best ensures that consumers are adequately protected and at the same time prevents lawsuits over cosmetic or trivial defects.

{¶ 37} If a subjective standard were applied, however, practically every vehicle with a defect would be a "lemon," and manufacturers would, as a practical matter, never prevail once the consumer demonstrated that the vehicle was under warranty and the defect was timely and properly reported for repairs the required number of times. To prevail on summary judgment, the consumer would simply need to show these two elements and submit an affidavit stating that the defect substantially impaired the vehicle's use, value, or safety *to them*. A subjective standard exponentially expands the Lemon Law's application beyond its intent.

{¶ 38} Consider the following hypothetical: Cathy is a single mom. On January 1, 2007, Cathy purchases a minivan from an authorized dealer of Mega Motors Corporation in Little Town, Ohio. The next day, Cathy pulls into Big–

Mart grocery and notices the battery light is illuminated. Cathy returns the minivan to a Mega Motors authorized dealer the next day and reports the problem. The dealer fixes the light. Cathy returns the minivan three more times with the same problem. At no time, however, has the vehicle failed to operate. Frustrated, Cathy seeks an attorney and files a Lemon Law claim.

{¶ 39} Cathy alleges in her complaint that the minivan is under warranty and that she has presented the vehicle for repairs to the battery light four times within one year. Cathy also states that the illuminated battery light has substantially impaired the vehicle's safety to her. Mega Motors files an answer admitting that the minivan is under warranty and that Cathy presented the minivan four times for repairs, but denying that the illuminated battery light has substantially impaired the vehicle's safety.

{¶ 40} Subsequently, Cathy files a motion for summary judgment. In support of her claim that the minivan's safety has been substantially impaired under the Lemon Law, Cathy files an affidavit in which she alleges that (1) when she was a child, her mother and she were stranded in a vehicle with a dead battery for hours, and this experience was extremely frightening to her, (2) safety is extremely important to her as a single mother, especially after her traumatic experience as a child, and (3) the illuminated battery light substantially impairs the vehicle's safety to her.

{¶ 41} Applying a subjective substantial-impairment standard, Cathy must prevail. Cathy has established all the elements of a Lemon Law claim: (1) the minivan was under a written warranty, (2) the problem or defect was reported to the manufacturer's authorized dealer for repair within the first year, and (3) the vehicle is nonconforming. Cathy demonstrated that the vehicle was nonconforming since she provided an affidavit that stated that the vehicle's safety was substantially impaired *to her* because of her past traumatic life experience and her status as a single mother. We cannot believe that the legislature intended vehicles with trivial defects like the hypothetical minivan above to be covered under the Lemon Law, and yet, these vehicles would be lemons if a subjective standard were applied.

{¶ 42} Furthermore, application of the Lemon Law to objectively trivial or cosmetic reasons is inequitable. In the hypothetical above, for example, Cathy was able to drive a new vehicle that was mechanically fine, but had a malfunctioning battery light. Once Cathy establishes that the minivan is a lemon, though, she is entitled to the following:

The full purchase price including, but not limited to, charges for undercoating, transportation, and installed options;

(2) All collateral charges, including but not limited to, sales tax, license and registration fees, and similar government charges;

(3) All finance charges incurred by the consumer; [and]

(4) All incidental damages, including any reasonable fees charged by the lender for making or canceling the loan.* * *

R.C. 1345.72. If Cathy were to prevail, that would mean that she had been able to drive a new, mechanically functioning car for free because of a bothersome battery light. Cathy would be more than made whole—she would receive a windfall. Although the legislature has determined that this remedy is appropriate for vehicles that qualify under the Lemon Law, it is hard to fathom that the legislature intended such a harsh remedy for objectively trivial defects.

{¶ 43} Finally, a subjective substantial-impairment requirement would also result in increased litigation. If a consumer need only attach an affidavit affirming that a defect substantially impaired the vehicle's value, use, or safety *to them*, what would prevent those consumers who have simply soured on their vehicle from filing suit? After all, a consumer could truthfully state that just about any defect substantially impaired the value, use, or safety of the vehicle *to them*, since it may depend upon that particular consumer's sensitivities and life experiences.

{¶ 44} For all these reasons, we hold that the question to ask when determining whether a vehicle is nonconforming under the Ohio Lemon Law is whether a reasonable person would conclude that the alleged defect or condition substantially impairs the vehicle's use, value, or safety.

d. Case Sub Judice

{¶ 45} Applying an objective substantial-impairment standard to the case sub judice, we conclude that a reasonable person would not find that the Wrangler's defective lift-gate latch substantially impairs the vehicle's use or value.

{¶ 46} The parties do not disagree on the nature of the defect. Essentially, the lift-gate latch opens due to the vehicle's cabin air pressure when the driver or passenger side door is closed. The parties agree that the problem can be remedied by cracking the window of either door before closing it. When the lift-gate latch is open, the Wrangler is noisier when driven. This defect, although bothersome, does not substantially impair the vehicle's use, value, or safety to a reasonable person.

{¶ 47} First, the problem does not affect the Wrangler as a whole. The lift-gate latch is a part of a removable hard top, and does not affect the mechanical functioning of the vehicle. In fact, the vehicle remains fully operable today, and Iams's decision to park the vehicle does not render it inoperable. Therefore, the

defective latch does not substantially impair the Wrangler's use, qua Wrangler, but impairs only the use of the removable hard top.

{¶ 48} Second, the impairment of the vehicle does not affect the Wrangler's essential design and purpose. The impairment that is alleged to be substantial causes increased wind noise. Reasonable consumers understand that Jeep Wranglers are not purchased for their quiet, comfortable ride; rather, Jeep Wranglers are bought for their rough-and-ready design. Reasonable consumers also understand that the Wrangler's design results in a louder, rougher ride compared to other vehicle designs. If Iams had purchased a Chrysler sedan or even a Jeep Grand Cherokee with this same defect, his argument would have been more persuasive. We cannot agree that a reasonable person would find that increased wind noise substantially impairs the use of a Jeep Wrangler.

{¶ 49} Third, the defective lift-gate latch is minor and does not constitute a concern for safety. According to Iams's expert, the rear window glass lifts, at most, two to three inches and then settles back in position with only a 1/8 inch gap between the window and the frame. The parties indicated at oral argument that the spare tire and brake-light assembly mounted on the rear tailgate prevent the window from completely opening, and this claim is substantiated in the record. Because of this, even Iams's expert admitted that the defective lift-gate latch is not a safety concern.

{¶ 50} Furthermore, the fact that the gap between the rear window and the frame is 1/8 inch demonstrates that the defect is minor and that the diminished use or value is limited to increased wind noise. When asked if there was any other problem associated with the defective latch, Iams admitted that he never had any problems with water leaking underneath the hatch.

{¶ 51} Fourth, the evidence presented before the trial court did not establish that the defective lift-gate latch substantially impaired the Wrangler's value. Plaintiffs expert testified that repairing the Wrangler's defect would cost approximately $5,000 to $7,000.[3] However, the dispositive inquiry is not how much a repair might cost, but rather, assuming that the defect cannot be repaired, is the vehicle's value substantially diminished. Plaintiff and his wife stated that they had no opinion on the Wrangler's diminished value. Consequently, plaintiff failed to produce evidence that the vehicle's value was substantially impaired.

{¶ 52} For all these reasons, Iams's Lemon Law claim lacks merit.

---

3. Plaintiff's expert testified that this figure represented the cost of eight possible alterations *combined*. However, he also testified that the figure might be lower if some, but not all of the alterations were needed. Furthermore, he indicated that he was not certain of the repair costs since he could not say, for certain, the cause of the problem.

## 2. MMWA Claim

{¶ 53} As a second argument under assignment of error one, Iams maintains that the trial court erred in granting summary judgment in Chrysler's favor on his MMWA claim by relying on *McGuire,* 2004-Ohio-6799, 2004 WL 2913952. Although we agree that the trial court's reasoning was flawed, we, nonetheless, believe that the facts of this case fail to state a cause of action under the MMWA.

{¶ 54} In *McGuire,* the court reinstated a jury verdict in favor of a consumer who purchased a motorcycle with a defective cam-chain tensioner, which caused the bike to fail. 2004-Ohio-6799, 2004 WL 2913952 at ¶ 56. After the court determined that sufficient evidence existed to support the jury verdict in the consumer's favor on the Lemon Law claim, the court concluded that there was also sufficient evidence to support the jury verdict for the consumer on the MMWA claims, since both causes of action require the existence of an express warranty and the manufacturer's failure to repair within a reasonable time. Id. at ¶ 85.

{¶ 55} The trial court herein, however, reasoned that since the Lemon Law claim was invalid, the MMWA claims must also be invalid. The court reasoned from *McGuire's* conclusion that if the Lemon Law claim is valid, then the MMWA claim is valid, to its conclusion that if the Lemon Law claim is *not* valid, then the MMWA claim is *not* valid. The court's reasoning has the following syllogistic form: If A, then B. Not A, therefore not B. This syllogistic form is the logical fallacy known as denying the antecedent, and therefore, the trial court's reasoning is erroneous.

{¶ 56} As we have stated infra, to prevail under the Lemon Law, plaintiff must establish: (1) he was the owner of a vehicle covered by a written warranty, (2) the motor vehicle does not conform to the applicable expressed warranty, (3) he reported the nonconformity to the manufacturer or manufacturer's authorized dealer within one year following the original date of delivery or the first 18,000 miles of operation, whichever is earlier, and (4) the manufacturer or authorized dealer was unable to conform the motor vehicle to the express warranty by repairing or correcting a defect that substantially impaired the use, safety, or value of the motor vehicle after a reasonable number of repair attempts. *Dressler,* 2006-Ohio-4448, 2006 WL 2474337, at ¶ 19.

{¶ 57} To prevail under the MMWA, however, plaintiff must establish: "(i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Temple v. Fleetwood Ents., Inc.* (C.A.6, 2005),

133 Fed.Appx. 254, 268, 2005 WL 1285719, at *12, citing *Abele v. Bayliner Marine Corp.* (N.D.Ohio, 1997), 11 F.Supp.2d 955, 961.

{¶ 58} The two causes of action are similar, but not the same. The Lemon Law requires two additional criteria not required under the MMWA: (1) the consumer must report the defect within the first year or 18,000 miles, whichever occurs first, and (2) the defect "substantially impaired the use, safety, or value of the motor vehicle to the consumer." The MMWA, on the other hand, requires only that the consumer give the manufacturer a reasonable opportunity to cure the defects. In addition, the Lemon Law provides certain reasonableness presumptions for the number of times a consumer must return the vehicle for repairs. R.C. 1345.73. The Lemon Law, thus, has in some cases more stringent and specific standards than the MMWA. Therefore, it is generally true that if a plaintiff has a valid Lemon Law claim, plaintiff also has a valid MMWA claim. However, a valid MMWA claim does not necessarily result in a valid Lemon Law claim.

{¶ 59} In conclusion, we agree with Iams that the trial court's conclusion that if one fails to establish a valid Lemon Law claim, then one necessarily also fails to establish a valid MMWA claim was in error.

{¶ 60} That the trial court erred in its logic, however, does not mean that Iams prevails on his MMWA claim. "A judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant." *Bonner v. Bonner*, 3d Dist. No. 14–05–26, 2005-Ohio-6173, 2005 WL 3111940, ¶ 18, citing *Lust v. Lust*, 3d Dist. No. 16–02–04, 2002-Ohio-3629, 2002 WL 1593744, at ¶ 32, citing *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 110, 41 O.O.2d 412, 233 N.E.2d 137. Although Iams has most likely established MMWA elements (i), (iii), and (iv), it is not clear that he has met element (ii), that the vehicle was nonconforming. For goods to be found "nonconforming" under Ohio law, they must have a defect that substantially impairs their value to the buyer. R.C. 1302.66(A). Although this has been interpreted as a subjective standard, goods are not generally found to be nonconforming for "trivial defects or defects which may easily be corrected." *Abele*, 11 F.Supp.2d at 961. Furthermore, MMWA "[l]iability has been found only where the product contained *numerous, serious defects*, and those defects went unrepaired despite repeated attempts by the seller to repair them." (Emphasis added.) Id.

{¶ 61} This case presents one defect, which is not serious in nature. The popping lift-gate latch is annoying, but the trial court and experts found that the problem can be remedied by simply cracking the window to one of the Wrangler's doors before closing it. As we have already stated, we are not persuaded that

the Wrangler's defect is serious or a substantial impairment to the vehicle's use, value, or safety. Thus, Iams's MMWA claims lack merit.

{¶ 62} For all these reasons, Iams's assignment of error is overruled.

{¶ 63} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

WILLAMOWSKI, J., concurs.

ROGERS, P.J., concurs separately.

ROGERS, Presiding Judge, concurring separately.

{¶ 64} I concur in the majority's conclusion that summary judgment was appropriate in this case. Specifically, I agree that an objective standard should be applied in determining whether a substantial impairment necessary for a Lemon Law violation exists. I write separately only to express my opinion that the defect alleged in this case might well have substantially affected the value of the vehicle. It is difficult to imagine a reasonable person paying full value for a vehicle in which the driver is required to lower his window every time he enters the vehicle, or to suffer with a window that is always open (even if only an eighth of an inch). However, without some evidence presented to the trial court as to the alleged diminution of value, sufficient to demonstrate a substantial effect on the value of the vehicle, I agree that summary judgment was proper.